Argued and submitted June 5, 1979, affirmed January 22, 1980

STATE OF OREGON,
*Respondent,*
*v.*
TERRY EDWARD MONTIGUE,
*Petitioner.*

(TC 78 0544, CA 11143, SC 26112)

605 P2d 656

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Catherine Allan, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

TONGUE, J.

LINDE, J., specially concurred and filed opinion.

LENT, J., concurred in part, dissented in part and filed opinion.

DENECKE, C.J., dissented and filed opinion.

HOLMAN, J., dissented and filed opinion.

**TONGUE, J.**

Defendant was convicted of illegal possession of dangerous drugs, ORS 167.207. On appeal to the Court of Appeals he assigned as error the denial of his motion to suppress evidence seized in a search of his apartment pursuant to a search warrant, based upon the affidavit of a police officer which stated that one Marshall Edward Morton had "contacted" the officer and informed him that while he (Morton) was in defendant's apartment he saw a large quantity of what he was able to identify as marijuana, as well as a large quantity of a white powdery substance which defendant represented to be cocaine and offered to sell to Morton.

Defendant contended that "the affidavit [in support of the application for search warrant] was insufficient to support a finding of probable cause by the magistrate," in that neither the credibility of the informant nor the reliability of his information was established in the affidavit, as required by *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 LEd 2d 723 (1964), and *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 LEd 2d 637 (1969).

The Court of Appeals rejected that contention (38 Or App 363, 590 P2d 274 (1979)), holding that an informant's reliability is sufficiently established for the purposes of such an affidavit when, as in this case, he is named and his information comes from personal observation, citing its previous decisions in *State v. Poteet,* 9 Or App 231, 495 P2d 783, *rev. den.,* (1972); *State v. Poole,* 11 Or App 55, 500 P2d 726, *rev. den.,* (1972), and *State v. Bidwell,* 14 Or App 679, 514 P2d 559, *rev. den.,* (1974). We allowed defendant's petition for review in order that this court may consider the intrinsic sufficiency of such an affidavit to support a search warrant.[1]

---

[1] Defendant's petition for review is limited to the question of the denial of defendant's motion to suppress because of the claimed insufficiency

*(Continued on following page)*

Both *Aguilar v. Texas, supra,* and *Spinelli v. United States, supra,* involved the sufficiency of search warrants based upon affidavits stating facts supplied by anonymous, unnamed informants. The test established by *Aguilar-Spinelli* to be applied in determining the sufficiency of such affidavits is the following "two pronged" test:

1. The affidavit must set forth informant's "basis of knowledge."

2. The affidavit must set forth facts showing the informant's "veracity," either by showing:

 a. The informant is credible, or

 b. That his information is reliable.[2]

This case involves the "veracity prong."

The difference between the "credibility spur" and the "reliability spur" of the "veracity prong" has been stated as follows:

> "Unless the alternative phraseology of *Aguilar* is meaningless, the informant's 'credibility' would seem to involve his inherent and ongoing character as a person—his reputation and demonstrated history of honesty and integrity. Informational 'reliability,' as something separate from its source's credibility, would seem to involve some circumstances assuring

*(Continued from previous page)*

of the affidavit to support the search warrant and does not question the decision of the Court of Appeals in affirming the denial by the trial court of defendant's supplementary motion to controvert the affidavit.

Although, as a result, the decision by that court on that question is not before this court on this petition for review, we note that the Court of Appeals, in support of its holding that the trial court did not err in denying defendant's motion to controvert, quoted from the Commentary, Oregon Criminal Procedure Code § 168 at 107 (1968) as stating that "the defendant may challenge the good faith but not the objective truth of testimony in support of probable cause * * *." We also note, however, that this comment was made with reference to the terms of that section of the Oregon Criminal Procedure Code [final draft], but that the Oregon Legislature, in adopting what is now ORS 133.693 expressly provided that defendant may contest the "good faith, *accuracy and truthfulness* of the affiant as to the evidence presented before the issuing authority," but may do so "only upon supplementary motion * * *."

[2] Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L. Rev. 741 (1974).

trustworthiness on the particular occasion of the information's being furnished. * * *" Moylan, 25 Mercer L. Rev. at 757-58.[3]

A distinction is recognized, however, in the application of these requirements to cases in which search warrants are based upon affidavits setting forth facts supplied by named "citizen-informers," as distinguished from paid or protected, anonymous and unnamed police informants.

Thus, the "citizen-informer" is distinguished from the ordinary "police informer" in 1 Lafave, Search & Seizure, § 3.3, p. 499 (1978), as follows:

"Everyone who gives information to the police might be called an 'informant' in the broad sense of that word. 'But the person most of us have in mind when we discuss this subject is in a somewhat more restricted category. He is likely to be a person in the underworld or a person on its periphery; in its confidence, or so much 'a part of the scenery' to the criminal that this person is in a particularly good position to know the story of a crime committed, the story of criminal business done, being transacted or proposed for the future; or at least he gets significant bits of information which, when placed in context by the investigator, will demonstrate an accurate picture of crime.' It is this type of person to which the word 'informant' is intended to apply herein.

"This narrower interpretation of the word is necessary in this context, for the courts have quite properly drawn a distinction between such a person and the average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what he knows as a matter of civic duty."

To the same effect, as stated in Harney & Cross, The Informer in Law Enforcement 40 (2d ed. 1968):

"On the probable cause issue, courts quite properly have drawn a distinction between such a person and the average citizen who by happenstance finds himself in the position of a victim of or a witness to

---

[3] Moylan, *supra,* note 2, at 757-58.

criminal conduct and thereafter relates information to the police as a matter of civic duty. One who qualifies as the latter type of individual, sometimes referred to as a 'citizen-informer,' is more deserving of a presumption of reliability than the informant from the criminal milieu."

As Justice Harlan noted (in his dissenting opinion) in *United States v. Harris,* 403 US 573, 599 (1971),

"[T]he ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis. The latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals.'"

As stated in Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L. Rev. 741, 769-72 (1974):

"The typical paid or protected police informant—drawn from the criminal milieu—is almost universally viewed with a jaundiced eye. He is inherently suspect. He hides behind a cloak of anonymity. His information—just as the testimony of an accomplice—is looked upon with a healthy skepticism and is examined with great scrutiny. The citizen-informer—with no ax to grind and motivated by civic duty—is in stark contrast * * *."

"* * * * *

" 'Veracity,' rather, in one or the other of its disjunctive manifestations [*i.e.,* credibility or reliability], flows from the very status of the citizen-informer."

In accord with these distinctions, probably most courts which have considered this problem have held that an affidavit naming a "citizen informant" as the source of the information set forth in the affidavit sufficiently satisfies the "veracity" requirement of *Aguilar-Spinelli,* without setting forth further facts showing that such an informant was "credible" or that his information was "reliable." *See, e.g.,* opinion by Friendly, J., in *United States v. Burke,* 517 F2d 377 (2d Cir 1975); *Cundiff v. United States,* 501 F2d 188 (8th

Cir 1974); *United States v. Bell,* 457 F2d 1231 (5th Cir 1972); *Woods v. State,* 533 SW2d 16 (Tex Crim App 1976); *State v. Drake,* 224 NW2d 476 (Iowa 1974); *State v. Lindquist,* 295 Minn 398, 205 NW2d 333 (1973); *State v. Paszek,* 50 Wis 2d 619, 184 NW2d 836 (1971); *People v. Glaubman,* 175 Colo 41, 485 P2d 711 (1971); *State v. Northness,* 20 Wash App 551, 582 P2d 546 (1978).

Some other courts have held that identification of a citizen informant does not of itself satisfy the requirement of "veracity," and that the affidavit must also affirmatively set forth the circumstances from which the status of the named informant as a "citizen informant" can be inferred by the magistrate in issuing the search warrant. *See People v. Smith,* 17 Cal 3d 845, 132 Cal Rptr 397, 553 P2d 557 (1976). *See also Commonwealth v. Stokes,* 480 Pa 38, 389 A2d 74 (1978).

Still other courts have held that when it affirmatively appears that the person named in the affidavit was not a disinterested "citizen informant," but was a possible accomplice or participant in the crime, such a person was not entitled to a presumption of reliability. *See United States v. Pincus,* 450 F Supp 66 (WD Pa 1978); *Wilson v. State,* 314 A2d 905 (Del 1973). *See also People v. Trontell,* 188 Colo 253, 533 P2d 1124 (1975).

Also, according to *LaFave, supra,* at § 3.4, p. 599:

"It does not follow from what has been said above that if the name of the person providing the information *is* disclosed, then he is by virtue of that fact alone properly characterized as a citizen-informer entitled to the presumption of reliability. That a person is named is not alone sufficient grounds on which to credit an informer, but it is *one factor* which may be weighed in determining the sufficiency of an affidavit.'" (Emphasis added)

In this case, however, there is another "factor" in addition to the naming of the informant in the affidavit in this case which entitled this named informant to

the presumption of veracity. Also, this is not a case in which it appears on the face of the affidavit that the named informant was himself a participant or accomplice in the criminal acts or in which other facts appeared on the face of the affidavit reflecting adversely upon the reliability of the named informant.

The affidavit of the police officer in this case stated as follows:

"*That on January 17, 1978 at approximately 9:00 p.m., I was contacted by Marshall Edward Morton,* 1037 W. 4th Ave., Apt. #29, Eugene, Lane County, Oregon during the course of a burglary investigation. *That Marshall Edward Morton advised me of the following:*

"That on January 16, 1978 from approximately 8:00 p.m. to 8:30 p.m. Marshall Edward Morton was present, with permission, in an apartment at 1522 W. 6th Ave., Apt. #5, Eugene, Lane County, Oregon. That Marshall Edward Morton had personal knowledge that 1522 W. 6th Ave., Apt. #5, Eugene, Lane County, Oregon is presently occupied by and rented by a person known to Marshall Edward Morton to be Terry Edward Montigue.

"That while present at 1522 W. 6th Ave., Apt. #5, Eugene, Lane County, Oregon on January 16, 1978 from approximately 8:00 p.m. to 8:30 p.m. Marshall Edward Morton observed a large quanity (sic) of a green vegetable material that Marshall Edward Morton was able to identify as the narcotic drug marijuana. Marshall Edward Morton also observed a large quantity of a white powdery substance which Terry Edward Montigue represented to be the narcotic drug cocaine which Marshall Edward Morton could purchase for one hundred dollars per gram.

"That Marshall Edward Morton has been shown marijuana on numerous occasions by numerous persons who used the narcotic drug marijuana and Marshall Edward Morton is familiar with the narcotic drug marijuana and can identify it in its processed form.

"That in my discussions with Marshall Edward Morton I have further learned that he is capable of

identifying the narcotic drug marijuana through casual use." (Emphasis added)

In Oregon, by reason of ORS 162.375, it is a crime to initiate a false report to a law enforcement agency. Also, a person who does so may be liable for damages in a civil action for malicious prosecution. *Cf. Rose v. Whitbeck,* 278 Or 463, 564 P2d 671 (1977). Finally, by revealing his name, and by thus exposing his identity, an informant may more likely be called as a witness so as to be exposed to the penalties of perjury in the event that his testimony is contrary to the facts stated in the affidavit.

The affidavit in this case states not only the name of the informant, but that he (the informant) "contacted" the police officer within 24 hours of the event in question and "advised" the officer of the fact that he was present in defendant's apartment "with permission" for a period of only 30 minutes; that while he was there he observed not only a substance which he believed to be marijuana, but also a substance which defendant represented to be cocaine and offered to sell to him.

We hold that from these facts, taken as a whole, the magistrate could properly infer that Mr. Morton "initiated" the report of a crime to a law enforcement agency which, if false, would subject him to punishment under ORS 162.375, as well as to possible liability in damages for malicious prosecution and further punishment for perjury if subsequently called as a witness and that, for these reasons, this named informant was sufficiently credible and his information sufficiently reliable so as to provide a proper basis for the issuance of a search warrant.

We hold that the facts stated in the affidavit in this case were sufficient to support the issuance of the search warrant and that the trial court did not err in denying defendant's motion to suppress. Accordingly, we affirm the decision by the Court of Appeals.

Affirmed.

**LINDE, J.,** specially concurring.

Important in this case is that the court is in agreement that a search warrant is not adequately supported by an informant's statement merely because the informant is named in the affidavit. More is required to show why the issuing judge should believe the informant besides his name. The majority and minority disagree only about whether the magistrate who issued the warrant upon the affidavit in this case made a misjudgment requiring the suppression of the evidence seized under the warrant.

The requirement that persons or places ordinarily may be searched only upon a judicial warrant issued "upon probable cause, supported by oath or affirmation" is one of the classic formulations of the American bills of rights. Or Const art I, sec 9. In deference to this constitutional guarantee, ORS 133.545 provides in part:

"(1) A search warrant may be issued only by a judge.

"(2) Application for a search warrant may be made only by a district attorney or by any police officer.

"(3) The application shall consist of a proposed warrant in conformance with ORS 133.565, and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that such things are in the places, or in the possession of the individuals, to be searched. If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."[1]

---

[1] The section continues:

"(4) Instead of the written affidavit described in subsection (3) of this section, the judge may take an oral statement under oath when circumstances exist making it impracticable for a district attorney or police officer to obtain a warrant in person. The oral statement shall be recorded and transcribed. The transcribed statement shall be consid-

*(Continued on following page)*

[368]

Central to the constitutional guarantee is that the search may be made only if a judicial officer, not a police officer or a prosecutor, is convinced by trustworthy information under oath that there is probable cause for authorizing the search. It is a judgment in which the judge cannot defer to the officer seeking the warrant; he must make it himself. When the information comes from someone other than the person who swears to it, the judge must know more than that the affiant believes the informant; the judge must know why *he* should believe the informant.

The judge's responsibility for decision can hardly be capsulized in a mechanical rule that obliges him to issue a warrant whenever the name of a source of otherwise plausible statements appears in an affidavit. Nor can he be expected to decide whether to believe the hearsay recited in the affidavit by whether the informant's name is George Washington or Ananias.

It seems that the legal significance of the informant's name as such has become exaggerated as a reflex from the more vexing concern with affidavits relying on unnamed informants, particularly "police informants." This concern about unnamed informants is incorporated in the last sentence of ORS 133.545(3), quoted above. Because courts have been more troubled about authorizing searches on the hearsay statements of unnamed "police informants," the reaction seems to

*(Continued from previous page)*
ered to be an affidavit for the purposes of this section. In such cases, the recording of the sworn oral statement and the transcribed statement shall be certified by the judge receiving it and shall be retained as a part of the record of proceedings for the issuance of the warrant."

There is no claim here that the warrant is supported by oral statements under subsection (4). As the statute makes clear, the magistrate may consider oral statements only when it is impracticable for the prosecutor or police officer to obtain a warrant in person. When such an officer appears before the magistrate, all supporting information must be found in the written affidavit. Additional oral statements of facts in support of the requested warrant are improper unless they are reduced to writing and sworn to as a supplemental affidavit.

[369]

be that when this problem is not presented, a judge needs no further assurance of the informant's probable truthfulness before issuing a warrant. But this reflex is a patent non sequitur. The fact that a person quoted in the affidavit is not represented to be an unnamed police informant tells the judge nothing about him or her other than that he or she is not an unnamed police informant. Most people are not. Among the vast majority of people who are not "police informants" in the sense of having a frequent or ongoing relationship with the police, the judge can hardly draw an inference whose report to the police is worthy of respect and whose is not without more information than a name. Nor does it take one any further to clothe anyone who is not a "police informer" in the mantle of a "citizen informer." Since citizenship as such is obviously not meant to be relevant, the term again is only a way of distinguishing the named informant from one who is in one or another relationship of dependence, control, or continuing collaboration with the police.

In other words, the question of sufficient identification is whether the judge can conclude that the unsworn hearsay information on which he is asked to issue a warrant, if it is not otherwise vouched for on grounds stated in the sworn police affidavit, originated in a source independent of the police itself, a source worthy of the judge's belief. What all the "prongs" and "spurs" in the analyses quoted in this case come down to is this basic duty of the judge to make up his own mind upon the sworn submissions of the affidavit, whether to believe the statements that are claimed to constitute probable cause to search someone's home or property or effects. A rule that a name without more suffices to support an affidavit based on hearsay would contradict the law that the judge's responsibility for accepting or rejecting the adequacy of the "probable cause" for a search cannot be delegated to the officers who request the warrant.

In the present case the prevailing opinion postulates that the judge who issued the warrant could

infer from the affidavit that the named informant was a resident of Eugene, with a known address, otherwise independent of the police, who on his own initiative came forward to give the police information on his personal knowledge concerning the actions of another person known to him. We may presume that the judge did conscientiously decide for himself to draw that inference and to regard the informant as more likely truthful than not. ORS 41.360(15)-(17). Certainly the record shows nothing to the contrary. It is true that the basis for such an inference in the affidavit was minimal and the future practice should be to provide more supporting information. But the case was argued in the suppression hearing and in the Court of Appeals primarily on the issue of controverting the affidavit by evidence attacking the informant's veracity rather than of the adequacy of the affidavit to allow the issuing judge to believe the informant's statement in the first place. Although that issue was raised, perhaps it was slighted because the Court of Appeals had previously held that naming an informant in the affidavit is in itself sufficient to support issuance of a warrant.

That view has now been disapproved. On the record of this particular case, the issuing judge is entitled to the benefit of any doubt whether the informant was sufficiently described to deserve belief, without having anticipated today's holding. I therefore concur in the result.

**LENT, J.,** concurring in part; dissenting in part.

I concur in the majority's holding that the mere naming of an informant does not suffice to furnish a basis for the magistrate to conclude that the informant is veracious. I concur, also, in the reasoning for that conclusion found in the separate, concurring opinion of Linde, J. I dissent, however, from the holdings of those opinions that the affidavit in this case affords

enough additional information for the magistrate to infer the informant is truthful.[1] Moreover, I believe something more should be said as to the basic approach in analyzing the sufficiency of an affidavit to establish probable cause.

*The General Proposition That Mere Naming Is Insufficient.*

It is conceded that there is no statute which is dispositive of the matter now before us and that we must turn to Article I, section 9, of the Oregon Constitution or the Fourth Amendment to the United States Constitution to resolve the issues before us. We should be mindful of certain considerations with respect to those constitutional provisions. Over half a century ago this court expressed a basic principle to be kept in mind insofar as Article I, section 9, of the Oregon Constitution is concerned. In *State v. McDaniel,* 115 Or 187, 194, 231 Pac 965, 237 Pac 373 (1925) we said that this constitutional provision is to be strictly construed in favor of the individual who invokes its protection. The Supreme Court of the United States similarly views the function of the Fourth Amendment. In *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 US 388, 392, 91 S Ct 1999, 29 L Ed2d 619 (1971) that court noted that the Fourth Amendment "guarantees to citizens of the United States the *absolute right* to be free from unreasonable searches and seizures * * * " (emphasis added).

The *reason* for enforcement of each of the relevant constitutional provisions *is to protect* citizens, *the law abiding* as well as the criminal, against unreasonable searches and seizures, and absent *uncompromising* examination of the reliability of alleged informants by *both* magistrates *and* reviewing courts protection for

---

[1] On the contrary, as I shall discuss later in the body of this separate opinion, I find information which, I believe, should tend to arouse the magistrate's suspicion that he needs to know something more of this informant to dispel a rather logical inference that this informant is of the "criminal milieu."

all persons against unreasonable searches will simply disappear.

Both the state and federal constitutions require probable cause to be shown for the issuance of a warrant. When the information presented by affidavit to the magistrate to establish probable cause is that of the affiant himself the oath of the affiant is considered prima facie sufficient for the magistrate to accept the veracity of the supplier of the information. On the other hand where the information is not presented upon the personal knowledge of the affiant but rather upon the unsworn statement of another (the informant) to the affiant, the constitutions require that the affidavit must contain sufficient data from which *the magistrate* will be independently convinced of the trustworthiness of the information given by the informant.

From *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed2d 723 (1964) and *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed2d 637 (1969) Judge Moylan has developed an outline oft cited and utilized in determining whether an affidavit of this kind is sufficient to meet the constitutional tests of a showing of probable cause. *See,* Moylan, "Hearsay and Probable Cause: An Aguilar and Spinelli Primer," 25 Mercer Law Review 741, 755:

> "The *Trustworthiness* of Hearsay
> "I.   The *Basis of Knowledge* Prong
> "II.  The *Veracity* Prong
>        "A.   The *Credibility* Spur
>        "B.   The *Reliability* Spur" (original italics)

Judge Moylan's outline may be a valuable tool and serve well as a point of departure for analysis in a given case, but it contains a trap in its very configuration because it leads us to focus first upon the knowledge prong and then upon the veracity prong. I believe that an affidavit of the kind here involved is properly tested by turning first to whether there is sufficient

[373]

data sworn to by the affiant to afford the magistrate a basis for concluding that the informant is veracious.

The Court of Appeals asserted in this case (38 Or App at 365) that "an informant's reliability[2] is sufficiently established where, as here, he is named and his information comes from personal observation." The proposition will not stand because it *assumes* as true something which is not necessarily true. It assumes that the informant is an eyewitness. Whence the data that the informant was an eyewitness? Why, from the information which the informant gave to the affiant. The assumption is totally unwarranted unless the magistrate has some data from the affiant to afford a reasonable basis for the magistrate to conclude the informant is veracious. *Only then* can the magistrate reasonably infer that the informant's claim of being an eyewitness is true. In other words, how can the magistrate start by assuming the claim of being an eyewitness is true and from that assumption conclude that the information is trustworthy? He can't, of course, unless the affidavit affords data to show the magistrate that the informant is a "truth speaker" (Judge Moylan's apt term) and, therefore, that the magistrate should believe the informant's most fundamental assertion, *i.e.,* that he is an eyewitness.

It is urged upon us that naming the informant is sufficient to establish a basis for the magistrate to conclude that the informant is probably to be believed in what he has asserted to the affiant. Some of the cases cited to us as standing for such a rule seem to proceed upon a line of reasoning that *Aguilar* and *Spinelli, supra,* dealt with unnamed informants and that the *language* of those cases was addressed to the particular problems associated with professional informers or stool pigeons, most likely themselves to be

---

[2] This use of the word "reliability" is subject to the kind of criticism made by Judge Moylan in his article cited in the text of this opinion. *See* pages 755-756. The Court of Appeals has apparently used the word "to connote the overall subject of the outline itself and every one of its constituent parts."

members of the criminal milieu. If the informant is not of that class and merely an eyewitness, therefore, say those courts, there is no basis for furnishing a "track record" of the informant, and it need not be done. I agree that furnishing a "track record" for the once-in-a-lifetime witness to crime who reports his observations to a police officer affiant is impossible. I do not agree that the affidavit provides probable cause simply because the informant is named therein and asserts that he is an eyewitness to certain events which describe the commission of a crime.

Probably the case which has gone furthest in requiring no more than name and claim of being an eyewitness is *United States v. Burke,* 517 F2d 377 (2d Cir 1975). There the sworn statements of police officers were that an informant identified by name and address had informed the affiants that the informant had seen the defendant in possession of a sawed-off shotgun at a certain time at certain premises. Upon noting that this was not an unnnamed informant case, the court summarily concluded that the rules of *Aguilar* and *Spinelli* were inapplicable because they could not be applied to the hearsay statements of eyewitnesses (including victims) theretofore unknown to the police. The court expressed concern over the paucity of data concerning the informant and suggested other data which could have been easily furnished.[3] Nevertheless the court seemingly required nothing more than the bare identification of the informant and his unsworn assertion that he was an eyewitness.

In *Burke* the court primarily relied upon *United States v. Bell,* 457 F2d 1231 (5th Cir 1972); *McCreary v. Sigler,* 406 F2d 1264 (8th Cir 1969); *United States v. Unger,* 469 F2d 1283 (7th Cir 1973); and *United States v. McCoy,* 478 F2d 176 (10th Cir 1973). A brief review of those cases would indicate that they are not all helpful to the *Burke* court position.

[3] The court even noted the possibility that the informant could have been lying to the affiants but brushed this off as being just part of the working of the system.

[375]

In *United States v. Bell, supra,* the crime was bank robbery. The affiant identified by name and address or bank occupation informants who, respectively, saw one or more defendants in the bank during the commission of the robbery, standing by a getaway car, running from the bank to a getaway car and proceeding away from the scene in a getaway car. The court said (457 F2d at 1238):

"* * * It is now a well settled and familiar concept, as enunciated by *Aguilar* and *Spinelli,* that supporting affidavits in an application for a search warrant must attest to the credibility of an informant and the reliability of his information. *See also United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). We have discovered no case that extends this requirement to the identified bystander or victim-eyewitness to a crime, and we now hold that no such requirement need be met. The rationale behind requiring a showing of credibility and reliability is to prevent searches based upon an unknown informant's tip that may not reflect anything more than idle rumor or irresponsible conjecture. Thus, without the establishment of the probability of reliability, a 'neutral and detached magistrate' could not adequately assess the probative value of the tip in exercising his judgment as to the existence of probable cause. Many informants are intimately involved with the persons informed upon and with the illegal conduct at hand, and this circumstance could also affect their credibility. None of these considerations is present in the eyewitness situation such as was present here. Such observers are seldom involved with the miscreants or the crime. *Eyewitnesses by definition* [emphasis here added] are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it. A 'neutral and detached magistrate' could adequately assess the probative value of an eyewitness's information because, *if it is reasonable and accepted as true,* [emphasis here added] the magistrate must believe that it is based upon first hand knowledge. Thus we conclude that *Aguilar* and *Spinelli* requirements are limited to the informant situation only."

It is clear from the emphasized matter that the court had *assumed* the truth of the claim by these informants that they were eyewitnesses. From that point the court departs to the next point on the circle, *i.e.,* that the magistrate can adequately assess the eyewitness's information and, if he believes it, he must then (returning to initial point on the circle) believe that it was based upon first hand knowledge, in other words, that the informants were eyewitnesses. I submit that this circuity of reasoning simply says that if one, not under oath, claims to be an eyewitness and his story is reasonable and accepted by the magistrate, the magistrate is entitled to treat his information as eyewitness information. Laying *Aguilar* and *Spinelli* aside entirely I submit that kind of reasoning will not support finding constitutional probable cause.[4]

In *McCreary v. Sigler, supra,* the informant was unnamed and had told the affiant that the informant was an eyewitness to the crime of breaking and stealing from a coin box in a public telephone booth. The informant told the affiant the identity of three persons involved, that one of them had talked to the informant at the scene and that the informant saw McCreary and one of the girls in the booth and at that time heard coins rattling in the box. Based upon this information officers had "tailed" McCreary and the girls and thereby developed further evidence of McCreary's guilt. The court found credibility had been sufficiently shown (406 F2d at 1269):

> "This total information provides a sufficient nexus and speaks of probable cause 'now.' "

In answer to the claim that the informant was not "identified in any way" the court answered in part (406 F2d 1268):

> "Yet mere identification by name does not establish reliability of the person. Even if the informant's

---

[4] I have no particular problem in agreeing that the affidavit in *United States v. Bell,* 457 F2d 1231 (5th Cir 1972) is sufficient because of the inferences which may be drawn from circumstances disclosed in the affidavit other than name and address or occupation of the informants, respectively.

occupation were given, this would not by itself lend 'credibility' to what he says."

*McCreary* actually tends to support the proposition that something more than identity by name, address, and occupation is required to satisfy constitutional requirements.

In *United States v. Mahler,* 442 F2d 1172 (9th Cir 1971) the crime was interstate travel to commit extortion. The victim had been the defendant's paramour and defendant had taken pictures of her and the two of them that "could be more than a little damaging to her." He attempted to use the pictures to extort property from her. Part of an affidavit to search defendant's property was on the basis of the unsworn statements of the victim to the affiant or a brother officer. These statements were corroborated in part by another woman, who was also "fully identified." The affidavit contained data supporting the victim's statements in many pertinent details. The court did *state* that when the informant is the victim it need not be shown by other facts that she is reliable. There is nothing in the case which would indicate that mere naming of an informant would show credibility, however, and it is obvious that the court has found "credibility" from the inherent nature of the tale and corroboration. The court cites *McCreary* as authority.

In *United States v. Unger, supra,* relied upon by the *Burke* court, the informant was not named. The affiant dubbed the informant a "citizen," which I take to be in the nature of a conclusory disavowal by the police officer affiant that the informant was of the criminal milieu. The affidavit swore that the citizen had informed the officer of the facts which explained a perfectly legitimate reason for the informant to be where he was in a position to observe the contraband. It was sworn that the informant claimed to be working at his occupation in the basement of an apartment building where he saw a locker containing weapons of a kind which the informant recognized because of his

[378]

military experience, that he had then called the police to report this experience, had pointed out the building to the police and had drawn a detailed diagram to assist the police in finding the contraband. There is nothing in this case to suggest that merely naming an informant who claims to be an eyewitness is enough to justify a neutral and detached magistrate in believing the information.

In a later case, the *Unger* court held insufficient an affidavit to establish the informant's veracity even though he was named and "came forward" to the police with his information and it appeared that he must have been an eyewitness, although that was not asserted. *United States ex rel Saiken v. Bensinger,* 489 F2d 865 (7th Cir 1973).

As above noted the *Burke* court also relied upon *United States v. McCoy,* 478 F2d 176 (10th Cir 1973). This was an airplane hijacking case. A named informant was a passenger, interviewed by an FBI agent who conducted a throw-down, snapshot lineup, at which the passenger identified defendant as the hijacker. Another named informant was a stewardess who claimed she had received a note from the hijacker. The note was turned over to an FBI agent and examined in the FBI laboratory where it was found by expert opinion to be the product of the defendant. Another named informant was a state police officer, who was a fellow Air National Guardsman with the defendant and supplied the information that defendant was an accomplished sky diver and had discussed with the informant "a plane sky-jacking" and that on the night of the crime defendant was not at home. The court found the affidavit sufficient without any discussion of whether merely naming these informants would have been sufficient to establish a basis for a finding of veracity.

In summary, the *Burke* court and the *Bell* court seemed to have adopted a rule that naming the informant who claims to be an eyewitness sufficiently establishes the informant's veracity for probable cause pur-

poses, but it is submitted the logic of the position is not sound and that in *Bell* the affidavit contained far more than just names of the informants. The other cases relied upon in *Burke* seem of little comfort to the *Burke* court either because the affidavit disclosed much more than mere name concerning the informant and his opportunity for eyewitness observation or because the court seems to have paid no attention to anything other than the basis of the informant's knowledge as distinguished from whether he was telling the truth as to the initial step, *i.e.,* that he was an eyewitness.

Another United States Court of Appeals case, *Cundiff v. United States,* 501 F2d 188 (8th Cir 1974), relies upon *McCreary, supra,* and holds sufficient an affidavit which identified a chain of informants claiming to be eyewitnesses in a bank robbery case. One was the teller from whom the money was taken, who described the robber and his clothing as being a rust colored jumpsuit. The next was a lady outside the bank who saw a man in such a jumpsuit leave the area of the bank and go behind a building, from behind which a green car left the area. The next were two boys who saw a man in such a jumpsuit come behind the building and get into a green Mercury auto with a damaged fender. The next was a man who while standing in his front yard had seen such a car within a block of the bank and the driver looking toward the bank. Within 20 minutes investigating officers found such a car parked at a nearby motel and thereby apprehended defendant who was a guest at the motel. The court said (501 F2d at 190):

> "We are sure that the personal and recent knowledge of identified eyewitnesses establishes sufficient probable cause in the instant case."

Do not these data, by implication, cry out the veracity of the informants?

The majority cites the *Burke, Cundiff* and *Bell* cases as standing for a rule that

[380]

"an affidavit naming a 'citizen informant' as the source of the information set forth in the affidavit sufficiently satisfies the 'veracity' requirement of *Aguilar-Spinelli,* without setting forth further facts showing that such an informant was 'credible' or that his information was 'reliable.'"

*Burke* may fairly be said to stand for such a rule because that is what the court held on the facts before it. In *Bell* and *Cundiff* there was much more in the affidavit than the mere identity of the "citizen-informants." None of those opinions seem to realize that calling one a "citizen-informant" is just as conclusory as calling him "reliable informant." How can the magistrate know any more concerning the veracity of the informant simply because the affiant asserts the informant to be a "citizen-informant" than the magistrate knows when the affiant asserts the informant is "reliable"? He can't, of course. It follows, therefore, that the affidavit must contain data concerning the informant which either directly tends to establish his veracity or permits logical inferences to establish that the informant is probably telling the truth. In some of the state court cases cited by the majority for the above mentioned rule such data clearly appears.

In *State v. Drake,* 224 NW2d 476 (Iowa 1974) the crime was receiving and concealing stolen goods. The informant was an *unnamed* person claiming to be an eyewitness. It appeared that the informant saw the stolen goods (racks of clothing) on the defendant's property when the informant was taken to the property as a possible purchaser thereof by a real estate salesperson. The informant was identified by occupation and employer. I submit there was enough here to establish a legitimate reason for the claimed eyewitness to be where he claimed to be thereby tending to dispel any inference that he was anything other than a concerned citizen without motive to falsify.

*State v. Lindquist,* 295 Minn 398, 205 NW2d 333 (1973) involved a warrantless arrest. The sufficiency

of probable cause for police action was the issue, however, and the informant gave the police her name, address and telephone number and claimed to be an eyewitness to defendant's possession of marijuana. She told the police her motive for coming forward was fear that someone such as defendant would supply drugs to her child. She furnished much detail concerning the elements of the crime. Again a case is presented of one who furnishes a motive for coming forward which prima facie appears to afford a basis for concluding the informant to be a concerned citizen with no motive to falsify.

*State v. Paszek,* 50 Wis2d 619, 184 NW2d 836 (1971) is cited by the majority as standing for the rule while Professor LaFave (1 LaFave, Search & Seizure, § 3.4, p. 591 (1978)) seems to indicate that the case does not stand for the rule. In any event the case involved a warrantless arrest and search incidental thereto. The issue was whether there was probable cause for the police actions. The informant had called the police by telephone and during the course of the conversation identified herself by name, occupation and place of business. She furnished detailed information concerning defendant's attempt on that morning to sell her marijuana at the place where she worked. She told police defendant would return to attempt a sale later that day. She described defendant in some detail. The police came to where she worked. Defendant returned as predicted and she identified defendant to the police. I submit the information furnished to justify police action was sufficient to establish to a magistrate's satisfaction that this informant was an average citizen motivated by nothing other than to cause the arrest of one engaged in criminal activity. The "veracity" of this informer shines through.

*People v. Glaubman,* 175 Colo 41, 485 P2d 711 (1971) states that the "citizen-informer" who acts openly should be encouraged. In this case the affidavit named the informant and identified her by occupation,

employer and place of employment. The affidavit contained detailed information disclosing circumstances of the legitimate reason for the informant's presence at the place from which her observations were made. The opinion says that probable cause (and therefore veracity) can be shown by identifying the informant by name and address. I submit there was far more before the magistrate to afford him basis for an inference that he there dealt with an average citizen with no motive to falsify but instead the desire to act only as a good citizen.

Professor LaFave in the work cited above at page 591 lists cases which stand for the proposition that veracity may be assumed where the data shows that the informant is an "average citizen" reporting his personal observations. Professor LaFave, however, rightly observes that veracity may appear by the very nature of the circumstances under which the incriminating information became known. For this he cites *People v. Paris,* 48 CalApp3d 766, 122 CalRptr 272 (1975). The case concerned a search upon a warrant. The informant was named and identified by occupation (a telephone installer and reserve police officer). The affidavit disclosed that the informant told the affiant that the informant was in the course of his occupation as telephone installer which caused him to go into a room where he observed what he thought to be marijuana based upon his training as a reserve police officer. Again we have a case where the data carries the indicia of the veracity of the informant. The magistrate may easily infer that the informant is an average citizen whose motive is to assist in the apprehension of a criminal. There is nothing to arouse any suspicion that the informant is himself involved in crime in general or this one in particular.

Professor LaFave lists several cases. I have read each of them and in each there are circumstances revealed concerning the informant which supply a basis for deeming him to be veracious. This is true

although the court may *say* that naming the "citizen-informant" suffices. That sort of statement obviously begs the question for the court has found the informant to be a "citizen-informant" by reason of data which affords a basis for a reasonable inference that the informant is a "truth speaker."

The same idea is summed up in *People v. Schulle,* 51 CalApp3d 809, 124 CalRptr 585 (1975) where the court says (51 CalApp3d at 814):

"* * * A 'citizen-informant' is a citizen who purports to be the victim of or to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement. * * * It is reasonable for police officers to act upon the reports of such an observer of criminal activity. * * *"

The court goes on to point out the other side of the coin is found in the case of the stool pigeon or person who is "criminally involved or disposed." Such persons, says the court, are generally motivated by something other than good citizenship.

From all of this I conclude that in assessing the trustworthiness of unsworn information furnished by one who claims to be an eyewitness to criminal activity the first inquiry must be whether there is sufficient data to afford a basis to find that the informant is veracious. Obviously this will not appear from merely naming the informant. A man's name alone tells the magistrate nothing concerning his veracity. The magistrate may, however, be persuaded that the informant is veracious where the data furnished to the magistrate either directly establishes that condition in some manner or, at least, indirectly establishes it by furnishing details which permit the reasonable inference that the informant acts with no other motive than that of the good citizen who is bent on assisting in law enforcement. There should be nothing left unexplained which would tend to arouse the magistrate's suspicion that the informant acts from other motives.

[384]

*The Special Proposition That This Affidavit Is Insufficient.*

The majority and concurring opinions find the affidavit in the case at bar to be sufficient to establish a basis for the magistrate to conclude that the informant is veracious. I totally disagree; moreover, I find the affidavit by neglecting to afford data to support a legitimate reason for the informant to be in a position to make his observation makes his veracity suspect on the very face of the affidavit.

The majority takes the position that there is another "factor" which entitles the named informant to the presumption of veracity.

This "factor" is made up of elements discussed following the setting forth, in haec verba, of the affidavit.

1) Initiation of a false report.

2) Exposure to liability for damages for malicious prosecution.

3) Exposure to the penalties of perjury.

4) Initiation of "contact" with the police by the informant and exposition of his eyewitness information.

I shall discuss these elements of the other "factor" seriatim.

1) Initiation of a false report to a law enforcement agency is a crime. ORS 162.375. It is a crime whether the initiator is named or unnamed in an affidavit by the initiatee. Named or unnamed in the affidavit, the informant's identity was known to the police, and if (a) his report was false and (b) the state should *choose* to prosecute, he would be just as subject to prosecution and conviction in one case as in the other.

2) If all other elements of the tort can be established, one who sets the criminal prosecution in motion is

liable to the party wronged whether or not the tort-feasor is named to the magistrate. Naming him merely makes his identity more readily discoverable to his victim. Failure to name him is, I submit, not an insuperable bar to discovery of his identity by the hypothetical plaintiff in whose favor the criminal proceeding has terminated.

3) Accepting the premise, *arguendo,* that a named informant is more likely to be called (but by whom?) as a witness in later stages of the criminal prosecution, I answer that he cannot be successfully prosecuted for perjury unless he is shown beyond a reasonable doubt to have been false in his *testimony* when called as a witness. Lying to the affiant police officer subjects him only to prosecution under ORS 162.375, as discussed under the first element, *supra.* It is reasonable to assume that the magistrate, if he thought of it at all, would suppose that the informant would not be called by the criminal defendant as a witness unless the informant is prepared to recant. This should speak little to the magistrate of veracity. The state would call him, if otherwise advisable, only if he is expected to stay by his story. Only if (a) that story *after given in testimony* can be shown to be false and (b) the state should *choose* to prosecute is the informant exposed to the penalties of perjury. This is a slender reed upon which the magistrate should depend for accepting the veraciousness of the informant.

4) That the informant was present at the scene of the crime with the permission of the defendant and was offered by the defendant an opportunity to participate in criminal activity and that the informant, in those circumstances, "contacted" the police about the incident seems not nearly so apt to attest to his veracity as would the circumstances of such "contact" by a completely disinterested bystander witness to crime. It would seem that in the circumstances described in the affidavit the magistrate would want to know something more about the presence "with permission" of the informant at the crime scene.

Still under this element, I find the affidavit's description of the crime scene and of the informant's knowledge of the nature of the contraband impressive in satisfying the knowledge prong, but I fail to understand how it supports the magistrate in finding the informant to be a "truth speaker." The further fact that he made his police report within approximately 24 hours certainly goes to the issue of whether it is probable that contraband is still on the premises, but how that should be of aid to the magistrate in drawing the conclusion that the informant probably speaks with straight tongue completely escapes me.

Still under the same element, I would note that if the affiant police officer were able to swear to some other facts which independently of the informant's advice tended to corroborate that advice in salient part, we might have an affidavit in which veracity of the informant is established under the second spur of the veracity prong, that is to say, reliability. There is nothing of that kind in this affidavit.

The purpose of this exercise has thus far been to attempt to show that while giving lip service to requiring something more than mere naming of the informant, the majority has actually required nothing more. The "factors" are nothing more than reasons for the argument that naming alone is enough.

For myself I would hold that in order to give the magistrate a basis for finding the named informant to be veracious something more is required. If the affiant has knowledge which tends to show that his named informant is a true "citizen-informer" such as an apparently nonparticipating, bystander eyewitness or a true victim of the crime, such details should be made available *in the affidavit* upon which judicial determination of probable cause is to be made. *Cf., State v. Dunavant,* 250 Or 570, 444 P2d 1 (1968); *State v. Hughes,* 20 Or App 493, 532 P2d 818 (1975). It seems only reasonable to require that if there are factors other than the informant introducing himself by name

to the police officer which have led the police officer to believe that the informant is a "truth speaker," the police officer affiant should make those known to the magistrate. I venture to say that a magistrate would feel put upon should he find that an affiant had asked him to rely upon less than the affiant knew in assessing the informant's veracity. There must be more for the magistrate than a named informant's plausible lie.

It must readily occur to anyone that in the situation with which this case is concerned there was an easy way to avoid this controversy over the informant's veracity. Since the police officer affiant swore that the informant came forward openly with his report of criminal activity what better way to put his information before the magistrate existed than to have the informer make his own affidavit. The thought occurred to this writer prior to my reading the case of *United States v. Burke, supra.* In that case, as I have noted, the court went further than any other in upholding an affidavit which identified the informant by name and address only.[5] Even that court, however, (517 F2d at 381) pointed out how easy it would have been to get an affidavit from the informant himself and thus obviate the entire inquiry as to his veracity. Where the police are dealing with a true "citizen-informant" in circumstances which make it relatively easy to obtain the informant's own affidavit, it would seem to be a highly salutary procedure.

I conclude that the majority is correct in acknowledging that the applicable constitutional provisions require more than mere naming of the informant to satisfy the veracity prong of the requirement that probable cause be established in the affidavit. I must dissent from the majority's decision that the affidavit in this case actually does more than to name the

---

[5] The court was seemingly completely unconcerned that the affidavit did not show any legitimate errand which took the informant to the vantage point for his observations.

informant insofar as affording to the magistrate a basis upon which to find the informant to be a veracious individual either generally or in this instance.

**DENECKE, C. J.,** dissenting.

I concur in that part of the dissenting opinion of Justice Lent that would hold that the affidavit in this case is insufficient.

**HOLMAN, J.,** dissenting.

I agree with that part of the dissent of Lent, J., which holds that the naming of the informant alone is insufficient to prove his probable veracity, that the affidavit is therefore defective, and that the majority opinion's so-called additional factors are nothing more than an argument that name alone is sufficient and is an example of pulling one's self up by one's bootstraps.