Before Denecke, Chief Justice, and Tongue, Howell, Lent, Linde and Peterson, Justices.

HOWELL, J.

Reversed.

STATE OF OREGON,
*Respondent,*
*v.*
DAVID SHAW,
*Petitioner.*
(CA 12379, SC 26804)

Donald D. Diment, Jr., argued the cause for petitioner. With him on the briefs were Lauren S. Holland, and Diment, Jagger & Billings, Eugene.

Frederick A. Hugi, Assistant District Attorney, Eugene, argued the cause for respondent. With him on the briefs was J. Pat Horton, District Attorney, Eugene.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Linde and Peterson, Justices.

HOWELL, J.

## HOWELL, J.

In these three consolidated cases, the defendants challenge the legal sufficiency of the affidavits upon which a Lane County district judge relied in finding probable cause to issue search warrants to conduct searches of defendants' homes. Defendants contend that the affidavits did not establish the veracity of the police informants, as required by our decisions and those of the United States Supreme Court. The trial court agreed and granted defendants' motions to suppress. The state appealed, ORS 168.030(3), and the Court of Appeals reversed in per curiam opinions. *State v. Carlile,* 43 Or App 692, 603 P2d 783 (1979); *State v. Reiter,* 41 Or App 389, 598 P2d 699 (1979); *State v. Shaw,* 41 Or App 632, 598 P2d 1305 (1979). We allowed review to consider whether the results below are consistent with the requirements of ORS 133.545; article I, section 9 of the Oregon Constitution; and the fourth amendment to the United States Constitution.[1]

In *State v. Montigue,* 288 Or 359, 605 P2d 656 (1980), we applied the "two-pronged test" of *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed

---

[1] ORS 133.545(3) states as follows:

"The application [for a search warrant] shall consist of a proposed warrant in conformance with ORS 133.565, and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that such things are in the places, or in the possession of individuals, to be searched. If an affidavit is based in whole or in part on hearsay, *the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained.* " (Emphasis added.)

Or Const, Art I, § 9 provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Fourth Amendment to the U.S. Constitution states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

2d 637 (1969), for analyzing the trustworthiness of hearsay information offered to show probable cause to obtain a search warrant. We held that the test for determining the sufficiency of an affidavit based on facts supplied by informants is (1) whether the affidavit sets forth the informant's "basis of knowledge" and (2) whether the affidavit sets forth facts showing the informant's "veracity" by indicating either that the informant is credible or that his information is reliable. *State v. Montigue, supra* at 362. *See also* Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer,* 25 Mercer L Rev 741 (1974).

*Montigue* involved an affidavit based on hearsay information provided by a named "citizen-informer." The present cases involve an issue not presented in *Montigue,* that is, the sufficiency of affidavits that are based on hearsay information supplied, not by "citizen-informers," but by named informers who are criminally involved.

Challenges to the sufficiency of two search warrants are involved. The first warrant covered the Carlile residence; the second warrant covered the home shared by Reiter and Shaw. In support of their application for the Carlile warrant, police filed an affidavit by Officer Dennis Williams of the Eugene Police Department. The affidavit stated, in relevant part:

"That I have been working a series of narcotics transactions with David Guth of the Lane Interagency Narcotics Team (LINT). That Mr. Guth has been a LINT agent for the past 4 years and has had extensive training in the identification and recognition of dangerous and narcotic drugs.

"That Mr. Guth indicated to me that on the evening of 30 March 1978 he had a conversation with Joan Alma Sundstrom, 936 Adams, Eugene, Lane County, Oregon. That Joan Sundstrom had in her possession a white powder substance that subsequently field tested positive for the Narcotic Drug Cocaine.

"That Mr. Guth indicated that Joan Sundstrom said that earlier on 30 March 1978 she had been in Judith Carlisle's [sic] residence where she had obtained the Cocaine.

"That surveillance by police agents indicated that Joan Sundstrom had entered the Carlisle residence which is located at 1160 Almaden, Eugene, Lane County, Oregon.

That a check with the Eugene Telephone directory further confirms that Judith Carlisle resides at 1160 Almaden, Eugene, Lane County, Oregon."

Carlile challenges the sufficiency of this affidavit on grounds that it gave the judge no basis to believe Sundstrom's allegations. She argues that the affidavit fails to show that Sundstrom was either a credible source or, on this occasion, a reliable informant. Carlile contends that Sundstrom's admission of criminal involvement places Sundstrom's credibility under suspicion.

The State contends that Sundstrom's reliability and credibility was established in the affidavit by the following: Sundstrom's name and address; and statements that police surveillance indicated that Sundstrom had been to the Carlile residence, that Sundstrom admitted obtaining cocaine from Carlile (which is an admission against penal interest), and that police confirmed that Sundstrom possessed cocaine.

We held in *Montigue* that the informant there was entitled to a presumption of veracity because the magistrate issuing the search warrant could infer from the affidavit that the informant, who was named, was a citizen-informer who had voluntarily initiated the report of a crime. The naming of the informant was not sufficient to establish the informant's veracity. But the fact that the named citizen-informer had voluntarily initiated the report of criminal activity supported issuance of the search warrant.

1.    We noted in *Montigue* that the naming of an informant is one factor which may be weighed in determining the sufficiency of an affidavit. 288 Or at 365, *quoting* 1 LaFave, Search and Seizure 599, § 3.4 (1978). We explained that by revealing her name, and thus exposing her identity, an informant may be liable for damages in a civil action for malicious prosecution or may be called later as a witness so as to be exposed to the penalties of perjury if her testimony is contrary to the facts stated in the affidavit. 288 Or at 367.

In the present case, therefore, the naming of the informant was one factor that would lead a judge to infer that the informant was telling the truth.

With respect to Sundstrom's admission of criminal involvement, we refer to the decision of the United States Supreme Court in *United States v. Harris,* 403 US 573, 91 S Ct 2075, 29 L Ed 2d 723 (1971). In that case a search warrant was issued on the basis of an affidavit by a federal tax investigator which recited that the investigator received information from an unnamed informant. The informant had stated that he had purchased illicit whiskey from within the residence described in the warrant. The investigator also stated in his affidavit that he had personal knowledge of the illegal activity.

The *Harris* court upheld the sufficiency of the affidavit, stating:

"Quite apart from the affiant's own knowledge of respondent's activities, there was an additional reason for crediting the informant's tip. Here the warrant's affidavit recited extrajudicial statements of a declarant, who feared for his life and safety if his identity was revealed, that over the past two years he had many times and recently purchased 'illicit whiskey.' These statements were against the informant's penal interest, for he thereby admitted major elements of an offense under the Internal Revenue Code. Section 5205(a)(2), Title 26, United States Code, proscribes the sale, purchase, or possession of unstamped liquor.

"Common sense in the important daily affairs of life would induce a prudent and disinterested observed to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. *Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search.* That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct. Concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another. But here the informant's admission that over a long period and currently he had been buying illicit liquor on certain premises *itself and without more,* implicated that property and *furnished probable cause to search.*" 403 US at 583-84 (emphasis added.)

Professor LaFave writes that the above analysis in *Harris* is one means of satisfying the requirement in *Aguilar* of showing that the informant's information is reliable

on this particular occasion. *See* 1 LaFave, *supra* at 502, § 3.3.

**2.** Carlile argues, however, that Sundstrom's admission of criminal involvement places Sundstrom's honesty and integrity under suspicion. We agree that an admission of criminal activity does not go far in establishing the informant as a generally credible source. Police informers, who often are paid or protected informers drawn from the criminal milieu, are "almost universally viewed with a jaundiced eye," especially when they hide behind the cloak of anonymity. *State v. Montigue, supra* at 364, *quoting* Moylan, *supra* 769. However, circumstances of a particular case may indicate to a magistrate that the informer admitting her criminal involvement is providing reliable information on this occasion.

**3.** We believe that Sundstrom's admission that she had obtained cocaine from the Carlile residence was an admission against penal interest that on this particular occasion is an additional factor that would lead a judge to issue a warrant to search the Carlile residence for cocaine.

Finally, with respect to the affiant's statements that police saw Sundstrom enter the Carlile residence, we find another factor that supports the sufficiency of the affidavit. Police corroboration of Sundstrom entering the Carlile residence, as well as police corroboration that Sundstrom possessed cocaine, would support a judge's belief that the informer was truthful in her statement that she had purchased cocaine at the Carlile residence. *See Spinelli v. United States, supra* 393 US at 415-16.

Therefore, considering that the police informant was identified, the police informant had admitted criminal involvement that related to the object of the search warrant, and the police partially corroborated the informant's information, we hold that the affidavit filed with respect to the Carlile residence was sufficient for the finding of probable cause to issue a search warrant.

**4.** Applying the same analysis to Reiter and Shaw yields a different result. The information that led the police to their home came from Judy Carlile. The affidavits filed by Officer Williams in support of his request for a warrant

to search the Reiter-Shaw residence stated, in relevant part:

"That during the early morning hours of 31 March 1978, I interviewed Judith Carlile, 1160 Almaden, Eugene, Lane County, Oregon. That she indicated she had been dealing in cocaine for approximately 4 months and had herself used cocaine on several occasions. That approximately 1/2 ounce of white powder substance that I recognized from training and experience to be cocaine was seized from her residence in her bedroom at 1160 Almaden.

"That she stated that she had obtained the cocaine on 30 March 1978 from a man named 'David' at his residence on Grant. That she said David shared the residence with Morgan Reiter and she provided the street address on the sheet attached as Appendix # 1 herein incorporated in this affidavit. That she indicated she had obtained 3/4 ounce of cocaine and had seen more at the residence.

"That my subsequent view of 1442 Grant, Eugene, Lane County, Oregon showed it to be a Green with Green trim, single-story, single family residence, woodframe with the numbers '1442' on the north side of the front door, located on the west side of Grant, between W. 14th and W. 15th in Eugene, Lane County, Oregon."

Had the police supplied the judge with grounds to believe Carlile's allegations, the affidavit would have provided ample cause to issue a warrant. However, the affidavit provided no assurance either that the informant was inherently credible or that her information was reliable. The fact that she was named and that she had made an admission against her penal interest is an insufficient guarantee of reliability where no partial police corroboration of the information was made.

The state argues that Carlile corroborated her statements by supplying officers with a typewritten list of addresses which she had in her bedroom. Upon this list she circled the name and address of defendant Reiter. The police found a house at the listed address. But the list had nothing to do with drug transactions. It was a City of Eugene directory of persons available to do home repairs on a reduced fee basis. The police would have found a house or shop at any address named on the list. The fact that Carlile possessed such a list hardly corroborates the allegation that cocaine would be found at the Reiter/Shaw residence.

The trial court should not have sustained the motion to suppress evidence in *State v. Carlile,* but it properly sustained the motion in *State v. Reiter* and *State v. Shaw.* Therefore, the Court of Appeals is affirmed in *Carlile* and reversed in *Reiter* and *Shaw.*