Argued and submitted June 30, affirmed October 15, 1986

# STATE OF OREGON,
*Respondent,*

*v.*

# CLARENCE RUSSELL FITZPATRICK,
*Appellant.*

(10-84-08872; CA A37558)

726 P2d 950

William A. Beckett, Judge.

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was

Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his conviction for theft in the first degree. ORS 164.055. He contends that the trial court erred in failing to suppress evidence seized during the execution of a search warrant. We affirm.

Defendant was charged with theft after a search for and discovery of stolen property in his home, surrounding lot and outbuildings. Following the search, he waived his *Miranda* rights and made a statement to the police. He moved to suppress the evidence and the statement on the ground that the search warrant failed to establish probable cause. The court denied his motion, and defendant was tried and found guilty on the basis of stipulated facts.

Officer Williams' affidavit provided, in relevant part:

"That I am a police officer with the Eugene Police Department and have been so employed for the past eleven years, that I have been a police officer for the past thirteen years and am currently assigned to the Burglary Detective Division at the Eugene Police Department. November 8, 1984 at approximately 10:00 a.m., while I was assisting Officer Pat Ryan of the Eugene Police Department in the investigation of a burglary that occurred between September 13, 1984 and October 8, 1984 at 318 Blair Street, Eugene, Oregon, I went past a residence located at 1098 River Loop #1, Eugene, Lane County, Oregon and observed in open view from my position on the road approximately fifty feet from the main residence at that location the top from a Ford van, blue and white in color which appeared to be identical to a van described by Mr. Lloyd Lanstrom as being taken in the burglary described previously.

"I know from my discussion with Officer Ryan that during Officer Ryan's contact with a James Buchholz, Buchholz told Officer Ryan the van stolen during the burglary was taken to a residence on River Loop #1 where it had been 'parted out' and the top removed. Buchholz told Ryan he saw the van at the residence while it was being dismantled.

"At approximately 2:00 p.m. on November 8, 1984, Buchholz took Officer Ryan and myself to 1098 River Loop #1, pointed out the residence in question and identified the blue and white top to a Ford van as belonging to Lloyd Lanstrom.

"The van stolen in the burglary described previously was a

1974 Ford van bearing Oregon license JKL 127 and was white with blue trim. A picture of the van is attached to this affidavit.

"The top I saw in the location I described is identical to the one pictured in the attached photograph.

"I observed the property at 1098 River Loop #1 to consist of a main house, single-story, wood-frame, apparently white in color, surrounded by trees to the West. On the South and West side of the residence appear to be chicken pens. The residence of 1098 is a single-story wood-frame residence.

"I know that the term 'parts out' means to dismantle a vehicle so the parts can be sold. I also know that until parts are sold they have to be stored.

"Based on the above-described information, I have probable cause to believe that parts from a 1974 blue and white Ford van bearing Oregon license JKL 127 taken in the burglary at 318 Blair Street, Eugene, Lane County, Oregon are currently located at 1098 River Loop #1, Eugene, Oregon."

Defendant argues that the trial court erred in failing to suppress the evidence, because Williams' affidavit does not show that the informant is credible or that his information is reliable, as required by ORS 133.545(3)[1] and Article I, section 9, of the Oregon Constitution.[2] ORS 133.545(3) codified the tests established by *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964), and *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969).[3] The state argues

---

[1] ORS 133.545(3), now ORS 133.545(4) provided:

"The application shall consist of a proposed warrant in conformance with ORS 133.565, and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that such things are in the places, or in the possession of the individuals, to be searched. If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

[2] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[3] The Oregon Supreme Court has restated the *Aguilar/Spinelli* tests as requiring that an affidavit containing hearsay information provided by an *unnamed* informant must set forth: "(1) the basis of the informant's knowledge, and (2) facts showing the informant's 'veracity,' *i.e.,* that he is credible or that his information is reliable." *State v. Villagran,* 294 Or 404, 409 n 3, 657 P2d 1223 (1983).

that, because the informant was *named,* ORS 133.545(3) does not apply. It also argues that, although the Supreme Court has applied the *Aguilar/Spinelli* test to affidavits involving named informants, *see State v. Villagran, supra* n 3; *State v. Carlile,* 290 Or 161, 619 P2d 1280 (1980); *State v. Montigue,* 288 Or 359, 605 P2d 656 (1968), those cases arose before *Illinois v. Gates,* 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983), in which the United States Supreme Court explicitly abandoned the *Aguilar/Spinelli* test in favor of a "totality of the circumstances" test.

In determining whether an affidavit is sufficient, we decide "whether a neutral and detached magistrate could conclude, based on the facts and circumstances shown by the affidavit, that there was probable cause to believe that the search would discover things specified in the affidavit in the places requested to be searched." *State v. Villagran, supra* n 3; ORS 133.555(2).[4] We must construe the supporting affidavit in a common sense and realistic fashion. *State v. Tacker,* 241 Or 597, 601, 407 P2d 851 (1965), quoting from *United States v. Ventresca,* 380 US 102, 108, 85 S Ct 741, 13 L Ed 2d 684 (1965). The issue on appeal is whether the informant's veracity was sufficiently demonstrated to justify the issuance of a search warrant. At the outset, we note that, because the informant in this case was *named,* ORS 133.545(3) does not apply.

In this case, the informant was named and his information was corroborated. He provided police with information about a crime which he stated that defendant had committed. Thus, the informant is subject to liability for malicious prosecution if his report is untrue; he may be called as a witness and be subject to penalties for perjury; and he is subject to liability if he has made a false police report.[5] *See*

---

[4] ORS 133.555(2) provides:

"If the judge finds that the application meets the requirements of ORS 133.535 and that, on the basis of the record made before him, there is probable cause to believe that the search will discover things specified in the application and subject to seizure under ORS 133.535, he shall issue a search warrant based on his finding and in accordance with the requirements of ORS 133.545 to 133.615. If he does not so find, the judge shall deny the application."

[5] ORS 162.375(1) provides:

"A person commits the crime of initiating a false report if the person

*State v. Montigue, supra,* 288 Or at 367. Those factors may be considered in determining his veracity. Additionally, the informant told the police that a stolen van was at defendant's residence and that it had been "parted out" and the top removed. He provided defendant's address and stated that he had seen the van being dismantled there. The informant took the police to the address and identified the van top located on the property as part of the stolen van. It matched with a picture that the police had of the stolen van. The trip to defendant's address provided corroboration of the informant's knowledge about the location of the house and that part of a van matching the description of the stolen van was there. That kind of corroboration, which included corroboration of an incriminating fact, may be considered in determining an informant's veracity.[6]

Considering the totality of the information presented in the affidavit, we conclude that a neutral and detached magistrate could conclude that there was probable cause to believe that parts of the stolen van would be found at defendant's address. We find no error.

Affirmed.

---

knowingly initiates a false alarm or report which is transmitted to a fire department, law enforcement agency or other organization that deals with emergencies involving danger to life or property."

[6] *State v. Carlile, supra,* is distinguishable. That case involved the veracity of a named informant who was criminally involved. Nothing indicates that the informant in this case was involved in the theft. *See State v. Evoniuk/Niemi,* 80 Or App 405, 722 P2d 1277 (1986).