# STATE OF OREGON,
*Respondent,*

*v.*

# DENNIS WAYNE CHRISTIANSEN,
*Appellant.*

(84 1543-C-2; 84 1544-C-2; CA A36022 (Control); CA A36023)
(Cases Consolidated)

717 P2d 649

Robert J. McCrea, Eugene, argued the cause and filed the brief for appellant.

Terry Ann Leggert, Assistant Attorney General, Salem,

argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals convictions for manufacture of a controlled substance, ORS 475.992(1), and possession of a controlled substance. ORS 475.992(4). He was convicted in a trial to the court on stipulated facts. We affirm.

■ Defendant challenges the sufficiency of an affidavit which Oregon State Police detective Reeg used to obtain a warrant to search his home. The affidavit is based primarily on information obtained from a named informant, Keitz, and contains two defects which are serious, but not fatal: it uses the results of a search previously declared illegal, and it contains information that is simply false.[1] Under *State v. Harp,* 299 Or 1, 9, 697 P2d 548 (1985), we excise the inaccurate portion of an affidavit. *See also State v. Haines,* 62 Or App 163, 168, 659 P2d 972 (1983). We must also consider the affidavit without the benefit of information obtained in the prior illegal search. *State v. Payne,* 72 Or App 631, 640, 696 P2d 1147 (1985); *see also* ORS 133.683; *State v. Cartwright,* 246 Or 120,

---

[1] This part of the affidavit relies on the results of the search that was previously declared illegal:

"That Detective R. C. Kennedy told affiant that in September of 1979, Sheriff's deputies had served a search warrant for cultivating marijuana, a controlled substance, and seized several marijuana plants. That said search warrant was served to Dennis Wayne Christiansen at 2858 Sykes Creek Road, Jackson County. A photograph of said marijuana plants seized is attached to this Affidavit and is incorporated herein by reference. That in the early part of 1981, a confidential reliable informant of the Jackson County Sheriff's Department told Deputy Dewey Patten that Dennis Wayne Christiansen was cultivating marijuana in a greenhouse on said property. That said confidential, reliable informant told Deputy Dewey Patten that a growing partner of Dennis Wayne Christiansen was a James Stafford during the summer of 1982. That Dennis Christiansen had supplied James Stafford with a quantity of marijuana plants to grow. That said informant wishes to remain anonymous for fear of reprisal. That subsequent investigation by the Jackson County Sheriff's Department led to the issuance of a search warrant and seizure of numerous growing marijuana plants. That said investigation further determined the reliability of information from the confidential informant about Dennis Wayne Christiansen."

The state admits that the following information is false:

"That Detective R. C. Kennedy told affiant that the Oregon State Police Department has executed a search warrant in the past at said residence occupied by Dennis Wayne Christiansen and seized growing marijuana plants. That I believe Detective R. C. Kennedy to be a truthful and reliable person."

Reeg maintained at the suppression hearing that Kennedy had actually made that statement, but he admitted that subsequent checking on his part had revealed that the Oregon State Police (as opposed to the Jackson County sheriff's department) had not previously conducted a search at defendant's residence.

125, 418 P2d 822, *cert den* 386 US 937 (1967). Without the part that is false and the part derived from the illegal search, the affidavit contains the following substantive information:

"That on April 13, 1984, affiant personally spoke with Mark Douglas Keitz. That Mark Douglas Keitz told affiant he had been involved in the use and sale of marijuana and methamphetamine, a controlled substance, for at least the past 5 years. That after speaking with Mark Douglas Keitz, and considering my background and training, affiant is satisfied that Mark Douglas Keitz knows and can identify marijuana and methamphetamine in its different forms, use, and manufacturing stages.

"That Mark Douglas Keitz proceeded with Detective Ray Looney of the Josephine County Sheriff's Department and affiant to five (5) separate locations in Josephine County. That Mark Douglas Keitz stated controlled substances were being sold at these locations. That Mark Douglas Keitz identified six (6) individuals who also sell controlled substances.

"That both Detective Ray Looney and affiant independently confirmed said locations and individuals as being involved in the possession and sales of controlled substances, from investigations and arrests. That I believe Detective Ray Looney to be a truthful and reliable person.

"That affiant was told by Mark Douglas Keitz that he had the opportunity to be at the residence located at 2858 Sykes Creek Road, Jackson County, within the past two (2) weeks. That Mark Douglas Keitz said the residence was occupied by 'Dennis,' who was also known to him as the 'Bud Wizard.' That on April 13, 1984, Mark Douglas Keitz, I, and Detective R. C. Kennedy of the Jackson County Sheriff's Office drove to the property described above. Detective Kennedy verified that this is the residence of Dennis Wayne Christiansen. That Mark Douglas Keitz told affiant that the 'Bud Wizard' gained this nickname from his expertise in the development and growth of a very powerful strain of marijuana called 'Endicutt Rooticus.' That said strain of marijuana was purple in color and reaches a maximum height of 4 to 5 feet and produced about 1 1/2 pounds of bud per marijuana plant. That Mark Douglas Keitz told affiant that 'Dennis' furnished starter marijuana plants to other individuals and receives a share of the profit when the marijuana plants mature and are harvested.

"That Mark Douglas Keitz told affiant that while he was

at said residence, an individual named 'Ron' purchased 1 1/2 pounds of marijuana from 'Dennis' and that 'Ron' used to live at said residence with 'Dennis.' That Mark Douglas Keitz also purchased 1/4 pound of marijuana from 'Dennis' and observed approximately 100 growing marijuana plants, to heights of approximately 10 inches, on shelves in a room of said residence. That I believe Mark Douglas Keitz to be a truthful and reliable person."

Defendant identifies several defects in the affidavit other than those noted above and in note 1. All are based on the assumption that Oregon's version of the *Aguilar/Spinelli* rule applies. *See Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964); *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969); *State v. Russell,* 293 Or 469, 473, 650 P2d 79 (1982); *State v. Souders,* 74 Or App 123, 700 P2d 1050, *rev den* 300 Or 112 (1985); ORS 133.545(4) *(formerly* ORS 133.545(3)). The state argues that the rule does not apply, because ORS 133.545(4) applies only to *unnamed* informants.

"* * * If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any *unnamed* informant's reliability and shall disclose, as far as possible, the means by which the information was obtained." ORS 133.545(4). (Emphasis supplied.)

The state also argues that, because the *Aguilar/Spinelli* analysis does not apply when the affidavit relies on a named informant, in those cases we should employ the "totality of circumstances" analysis that has replaced *Aguilar/Spinelli* at the federal level. *See Illinois v. Gates,* 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983).

We need not consider whether some less restrictive rule based on *Gates* should be applied, because the affidavit in this case meets the *Aguilar/Spinelli* requirements.[2] As stated in *State v. Montigue,* 288 Or 359, 362, 605 P2d 656 (1980), those requirements are:

"1.   The affidavit must set forth informant's 'basis of knowledge.'

2.   The affidavit must set forth facts showing the informant's

---

[2] We note that the Oregon Supreme Court has applied the *Aguilar/Spinelli* test in cases involving named informants. *State v. Villagran,* 294 Or 404, 657 P2d 1223 (1983); *see also State v. Carlile,* 290 Or 161, 619 P2d 1280 (1980).

'veracity,' either by showing:

'a.  The informant is credible, or
'b.  That his information is reliable.' "

Our review is limited to a determination of "whether a neutral and detached magistrate could conclude, based on the facts and circumstances shown by the affidavit, that there was probable cause to believe that the search would discover things specified in the affidavit in the places requested to be searched." *State v. Villagran,* 294 Or 404, 408, 657 P2d 1223 (1983).

■   Defendant does not deny that the affidavit adequately sets forth the informant's basis of knowledge. He argues, instead, that it does not contain information showing the informant's credibility or reliability. With respect to credibility, defendant argues:

> "So far as can be determined from the affidavit, the affiant had never spoken with the informant other than on the one occasion, nor did he have any information that any other police agency or personnel had successfully dealt with that person on any other occasion."

Defendant assumes that an informant's credibility can be established only through previous contacts between the informant and police. He is incorrect. *See State v. Hermach,* 53 Or App 412, 420, 632 P2d 466, *rev den* 291 Or 893 (1981). At least four factors contribute to Keitz's credibility. First, he is a named informant. Although he does not fit into one of the categories of "citizen informers" discussed in *State v. Villagran, supra,* 294 Or at 409, a magistrate could reasonably infer that a person who allows himself to be identified as the source of a serious accusation is more likely to be telling the truth than an informant who insists on anonymity. *See State v. Carlile,* 290 Or 161, 165, 619 P2d 1280 (1980).

Second, Keitz demonstrated that he knew the location of defendant's house and that he could identify marijuana. Similar showings were held to contribute to the credibility of the informant in *State v. Hermach, supra.* Third, he made declarations that were against his penal interest. Defendant argues that Keitz made the declarations only to obtain his release from jail. Even if that was his only motive, the

magistrate reasonably could have found that it did not destroy his credibility.

Nothing on the face of the affidavit compelled the magistrate to discredit the informant in defendant's favor. Reeg testified that Keitz supplied the information because he was tired of his involvement in the drug world. Reeg denied that he had promised him anything to prompt his decision to inform. Even if defendant is correct as to Keitz's motive, a magistrate might reasonably infer that he would have fabricated a less incriminating story if it was only to obtain his release and that it was unlikely that, in the hope of securing his release, he would dig himself a deeper hole by telling lies to the police. Finally, Keitz identified other drug sellers and other locations where drugs were sold, and the officers confirmed all of his other reports. Taken together, these factors would allow a neutral and detached magistrate to conclude that Keitz was credible.

■ Defendant argues:

> "[T]here is not a shred of police corroboration concerning the accuracy of the information given by the informant, e.g. they do not establish he had ever been to the defendant's premises, he did not produce any substance that he claimed came from the defendant's premises, nor is it in any way established that anything he says concerning the present activity at the defendant's residence is accurate."

Defendant ignores the corroborating information that led to the earlier illegal search of defendant's home. *See* note 1, *supra*. Although the *fruits* of that earlier search could not be considered, *the information that led to the search* is not tainted and could be used to corroborate Keitz's story. The fundamental issue to be addressed in considering questions of taint is

> "whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States,* 371 US 471, 488, 83 S Ct 407, 9 L Ed 2d 441 (1963).

Keitz's information satisfies both the reliability and credibility tests of the veracity prong of the *Aguilar/Spinelli* rule.

Affirmed.