Argued and submitted January 27, reversed and remanded July 23, 1986

STATE OF OREGON,
*Appellant,*

*v.*

MICHAEL LOU EVONIUK,
*Respondent.*

(10-84-09089; CA A35174 Control)

STATE OF OREGON,
*Appellant,*

*v.*

ELISE CHRISTINE NIEMI,
*Respondent.*

(10-84-09093; A37414)
(Cases Consolidated)
722 P2d 1277

Thomas A. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Terrance P. Gough, Eugene, argued the cause for respondents. With him on the brief was Thomsen, Gough & Gough, Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

The State appeals an order suppressing evidence granted on the ground that the affidavit for a search warrant did not establish probable cause under the Fourth Amendment and Article I, section 9, of the Oregon Constitution. Defendant Evoniuk was indicted for unlawful possession of a controlled substance (cocaine), unlawful manufacture of a controlled substance (marijuana) and eight counts of being an ex-convict in possession of a concealable firearm, in violation of ORS 475.992(4)(b), 475.992(1)(a) and 166.270, respectively. Defendant Niemi was indicted for unlawful possession of a controlled substance (cocaine) in violation of ORS 475.992(4)(b). Although both defendants filed motions to suppress evidence seized during a search of Evoniuk's residence incident to a search warrant,[1] his motion was heard first and was granted. Because both defendants were subjected to the same search, Niemi and the state had stipulated that the decision in Evoniuk's case would control. Thus, the evidence was also suppressed in her case. The cases are consolidated for appeal.

The only issue is whether the affidavit was sufficient to establish probable cause. The trial court held that statements by informants set out in the affidavit did not satisfy the *Aguilar-Spinelli* test, that the lapse of time between the receipt of information and the issuance of the warrant was too great and that probable cause was lacking to believe that evidence of defendant's unlawful trafficking in drugs would be found in his residence. We reverse.

The Fourth Amendment, Article I, section 9, and ORS 133.545(4) (formerly numbered ORS 133.545(3)) provide the standards for determining the sufficiency of a search warrant affidavit. Under Oregon law, if an affidavit contains hearsay information provided by unnamed informants, it

---

[1] Although defendant did not file a motion to controvert, a pretrial hearing was held during which arguments were heard on a motion to controvert and a motion to suppress. The court denied the motion to controvert. Evoniuk argues that, in a separate affidavit, Niemi denied making statements attributed to her in the affidavit for the search warrant. However, because the motion to controvert was denied and that denial is not raised as error on appeal, we view the affidavit for the search warrant on the basis of information stated within its four corners.

must satisfy the two-part *Aguilar-Spinelli* test[2] by setting forth (1) the basis of the informant's knowledge and (2) facts showing the informant's veracity. *Spinelli v. United States,* 393 US 410, 415-16, 89 S Ct 584, 21 L Ed 2d 637 (1969); *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964); *State v. Montigue,* 288 Or 359, 605 P2d 656, *cert den* 449 US 846 (1980); *State v. Christiansen,* 78 Or App 594, 717 P2d 649 (1986). Veracity can be established by showing that the informant is credible or that the information is reliable. *State v. Villagran,* 294 Or 404, 409 n 3, 657 P2d 1223 (1983).

Although the *Aguilar-Spinelli* test specifically applies to cases involving unnamed informants, it has also been applied in Oregon to named informants. *See State v. Villagran, supra; State v. Carlile,* 290 Or 161, 619 P2d 1280 (1980); *State v. Christiansen, supra,* 78 Or App at 598. Here, there are statements in the affidavit by named and unnamed informants. We agree with the trial court that the statements by the unnamed informants do not meet the *Aguilar-Spinelli* test, because the affidavit does not contain information setting forth the basis of the unnamed informants' knowledge or their reliability. However, we do not agree with the trial court that the information provided by the named informants failed to meet the test.

The affidavit relates that Ashbaugh, a citizen, contacted the affiant to advise him of behavior which suggested that a drug transaction had occurred:

"THAT ON APRIL 26TH 1984, I WAS CONTACTED BY A CITIZEN NAMED DAN ASHBAUGH WHO LIVES AT 3990 DOVE LANE, EUGENE, LANE COUNTY, OREGON WHO ADVISED ME THAT HE OBSERVED A SUBJECT KNOWN TO HIM THROUGH PAST HIGH SCHOOL ASSOCIATION AS MICHAEL EVONIUK DRIVE A HIGH-RISE STYLE BLACK-COLORED PICKUP TRUCK IN HIS (ASHBAUGH'S) NEIGHBORHOOD RECENTLY. THAT HE FURTHER OBSERVED EVONIUK BACK THIS SAME TRUCK INTO THE DRIVEWAY OF 3963 DOVE LANE AND DROP A PAPER BAG FROM HIS TRUCK ONTO THE

---

[2] Although the state's brief does not cite the *Aguilar-Spinelli* test, it presents arguments that the informant's statements are reliable and also satisfy the basis of knowledge requirement. The state cites Oregon cases that have applied the test.

DRIVEWAY AND THEN DRIVE AWAY. IMMEDIATELY AFTERWARDS, ASHBAUGH THEN OBSERVED A FEMALE WALK FROM THE HOUSE AT 3963 DOVE LANE, PICK UP THE BAG AND RETURN INTO THE HOUSE. ASHBAUGH TOLD ME THAT SHORTLY AFTER THIS, A NUMBER OF PEOPLE ARRIVED IN VEHICLES, WENT INTO THE HOUSE AT 3963 DOVE LANE, STAY FOR A SHORT PERIOD OF TIME AND THEN LEAVE. HE FURTHER TOLD ME THAT HE HAS OBSERVED EVONIUK DRIVE TO THIS RESIDENCE SEVERAL TIMES IN THE PAST AND THAT CONSISTENTLY, AFTER EVONIUK LEFT THAT RESIDENCE THE SAME PATTERN OF TRAFFIC AS NOTED ABOVE WAS OBSERVED. THAT ASHBAUGH ALSO TOLD ME THAT TWO ADULTS (MALE AND FEMALE) AND A CHILD LIVE AT 3963 DOVE LANE AND THAT THE MALE ADULT'S NAME WAS 'DAVE.' ASHBAUGH FURTHER STATED THAT RESIDENTS HAVE A RED COLORED TOYOTA PICKUP TRUCK. ON JUNE 20TH 1984, I PERSONALLY CONTACTED THE EUGENE WATER AND ELECTRIC BOARD OFFICE AND WAS ADVISED THAT THE POWER SUBSCRIBER FOR 3963 DOVE LANE WAS A SUBJECT NAMED DAVID P. CONNELL, WHO HAS BEEN AT THAT SAME ADDRESS SINCE SEPTEMBER 23RD 1982 AND LISTS A WOMAN NAMED LESLIE AS BEING HIS WIFE. I ALSO PERFORMED A CHECK OF DAVID CONNELL'S LOCAL RECORD THROUGH THE POLICE COMPUTER SYSTEM AND FOUND THAT HE OWNS A RED COLORED TOYOTA PICKUP TRUCK WITH THE OREGON LICENSE PLATE NUMBER OF 'CJT600.' "

Many courts have held that an affidavit naming a citizen-informant as the source of information is sufficient to satisfy the veracity requirement of *Aguilar-Spinelli*. *State v. Montigue, supra,* 288 Or at 364. Although the Oregon Supreme Court has held that naming the informant alone is not enough to establish veracity, that factor, when combined with the fact that the named citizen-informant voluntarily initiated the report, is sufficient. *State v. Montigue, supra,* 288 Or at 367; *see also State v. Carlile, supra,* 290 Or at 165. Here, Ashbaugh is shown to be reliable, because he is a named citizen-informant who was not involved in criminal behavior and who voluntarily initiated the report of a crime. The basis of his

knowledge is established, because he personally observed the events reported.

The behavior by defendant, which Ashbaugh personally observed, establishes probable cause to believe that Evoniuk was engaged in on-going drug-related activities.

In addition to the statement by Ashbaugh, the affidavit stated other facts, as recited by the affiant, linking defendant to the sale of drugs:

"THAT ON FRIDAY, JUNE 11TH, 1984, I WAS INVOLVED IN THE ARREST OF A SUBJECT KNOWN TO ME AS RONALD DEAN GRIFFIN. THAT I ARRESTED GRIFFIN ON A CHARGE OF UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE, SCHEDULE 2 - COCAINE AT 1025 BARSTOW, EUGENE, LANE COUNTY, OREGON. THAT DURING THE COURSE OF THIS ARREST I SEIZED FROM GRIFFIN TWO PAPERFOLDS WHICH CONTAINED WHITE CRYSTALLINE POWDER WHICH HAS SUBSEQUENTLY BEEN TESTED AT THE OREGON STATE POLICE CRIME LABORATORY AND WAS FOUND TO BE THE CONTROLLED SUBSTANCE COCAINE. THE OREGON STATE POLICE CRIME LABORATORY ANALYSIS INDICATED THAT THE COMBINED WEIGHT OF THE COCAINE FROM THE PAPERFOLDS WAS SEVEN AND EIGHT TENTHS GRAMS.

"I ESTIMATE THE VALUE OF THE SEIZED COCAINE AT APPROXIMATELY ELEVEN HUNDRED AND SEVENTY DOLLARS, BASED ON A PRICE OF ONE HUNDRED AND FIFTY DOLLARS PER GRAM.

"THAT ON TUESDAY, JUNE 19TH, 1984, IN PREPARATION FOR THE CRYSTALLINE POWDER TO BE TRANSPORTED TO THE OREGON STATE POLICE CRIME LABORATORY FOR ANALYSIS, I TRANSFERED [sic] THIS POWDER FROM THE TWO ORIGINAL PAPERFOLDS INTO NEW CONTAINERS. THAT AFTER REMOVING THE POWDER, I OBSERVED THAT THE PAPERFOLDS BOTH HAD WRITING ON THEM. THAT UPON CLOSER INSPECTION, I OBSERVED THAT BOTH PAPERFOLDS APPEARED TO COME FROM THE SAME SOURCE DOCUMENT IN THAT THE TWO PAPERFOLDS APPEARED TO BE ON NON-CARBON REPRODUCING-TYPE PAPER AND THAT THE PRINTED FORM MATERIAL ON BOTH WAS OF THE SAME PATTERN AND HAD SIMILAR

HANDWRITING ON BOTH. THAT ONE OF THE PAPERFOLDS IS DATED '6/11/84' AND HAS 'ODL 1201103' HAND WRITTEN ON IT. THE OTHER PAPERFOLD HAS A PARTIAL ADDRESS REMAINING ON IT OF '130 FULLER AVE' WITH 'GENE' AND A TELEPHONE NUMBER OF '688-3272'. COPIES OF THE ORIGINAL PAPERFOLDS ARE ATTACHED TO THIS AFFIDAVIT AND ARE THEREBY INCORPORATED HEREIN.

"THAT I PERSONALLY PERFORMED A POLICE COMPUTER CHECK OF THE ABOVE LISTED OREGON DRIVERS LICENSE NUMBER AND FOUND THAT IT IS LISTED IN MOTOR VEHICLE RECORDS AS BEING ISSUED TO MICHAEL LOU EVONIUK WITH A DATE OF BIRTH OF SEPTEMBER 18TH 1949 AND LISTS AN ADDRESS OF 4130 FULLER STREET, EUGENE, OREGON.

"THAT I SUBSEQUENTLY ASKED DETECTIVE GARY WEST OF THE EUGENE POLICE DEPARTMENT TO CHECK THE ABOVE LISTED TELEPHONE NUMBER THROUGH THE PACIFIC NORTHWEST BELL TELEPHONE SECURITY UNIT FOR SUBSCRIBER INFORMATION AND DETECTIVE WEST, SUBSEQUENT TO HIS CHECK WITH THIS UNIT ADVISED ME THAT THE TELEPHONE NUMBER SUBSCRIBER IS LISTED AS MICHAEL EVONIUK AT 4130 FULLER AVENUE, EUGENE, OREGON. THAT I ALSO ASKED DETECTIVE RICK SPENCER OF THE EUGENE POLICE DEPARTMENT TO ASK THE EUGENE WATER AND ELECTRIC BOARD OFFICE TO CHECK ITS RECORDS FOR THE SUBSCRIBER INFORMATION LISTED FOR THE ADDRESS OF 4130 FULLER AVENUE, EUGENE, OREGON AND DETECTIVE SPENCER SUBSEQUENT TO HIS CHECK WITH EWEB ADVISED ME THAT THE ELECTRICAL SERVICE IS LISTED UNDER AND BILLED TO MICHAEL EVONIUK.

"* * * * *

"THAT DURING THE COURSE OF MY ARREST OF GRIFFIN ON JUNE 11TH 1984, I SEIZED AN ADDRESS BOOK FROM GRIFFIN'S LEFT REAR POCKET WHICH HAD AN ENTRY IN IT FOR 'MIKE EVONIUK' WITH A TELEPHONE NUMBER OF '688-3272.' "

From that, it could reasonably be inferred that Griffin purchased the cocaine from Evoniuk at his house on the date of

his arrest and that Griffin had made the notations on the paperfolds.[3]

We hold that the affidavit contained sufficient information for the magistrate to conclude that evidence of Evoniuk's drug-related activities would be found at his residence. The affiant also stated:

"THAT BASED ON MY TRAINING AND EXPERIENCE IN THE AREA OF NARCOTICS INVESTIGATIONS, I KNOW THAT PERSONS WHO ARE INVOLVED IN THE LONG TERM BUSINESS OF THE DISTRIBUTION OF CONTROLLED SUBSTANCES ARE LIKELY TO KEEP CONTROLLED SUBSTANCES IN THEIR RESIDENCES, THAT THEY ARE ALSO LIKELY TO MAINTAIN RECORDS RELATING TO THEIR SALES OF CONTROLLED SUBSTANCES, AND THAT THEY ARE ALSO LIKELY TO MAINTAIN FINANCIAL RECORDS RELATING TO THE ASSETS THEY HAVE ACQUIRED AS A RESULT OF THEIR DISTRIBUTION OF CONTROLLED SUBSTANCES.

"THAT PERSONS INVOLVED IN THE DISTRIBUTION OF CONTROLLED SUBSTANCES DEAL ON A CASH PAYMENT BASIS AND ARE LIKELY TO POSSESS LARGE AMOUNTS OF CURRENCY.

"THAT PERSONS INVOLVED IN THE DISTRIBUTION OF CONTROLLED SUBSTANCES ARE LIKELY TO POSSESS ITEMS RELATING TO THE PACKAGING AND DISTRIBUTION OF THOSE CONTROLLED SUBSTANCES, INCLUDING PLASTIC BAGS, WEIGHING SCALES, RAZOR BLADES, SIFTING SCREENS AND GRINDERS, MIRRORS OR HIGHLY POLISHED HARD SURFACES, PAPERFOLDS AND TESTING DEVICES, SUCH AS MELT BOXES. BASED ON THE ABOVE DESCRIBED INFORMATION, YOUR AFFIANT HAS PROBABLE CAUSE TO BELIEVE, AND DOES BELIEVE, THAT FRUITS AND EVIDENCE OF THE CRIMES OF UNLAWFUL POSSESSION AND SALES OF COCAINE, TO WIT: COCAINE, CURRENCY, DRUG SALES RECORDS, FINANCIAL RECORDS RELATING

---

[3] Griffin filed a motion to suppress the evidence seized from him, and the motion was granted. The state appealed the motion but later moved for dismissal of the case. Defendant argues that the evidence cannot be introduced against him. We do not decide whether it was proper to receive the evidence that was unlawfully seized from Griffin, *see Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963), because Evoniuk did not raise the argument in the hearing on the motion to suppress.

TO ASSETS ACQUIRED FROM DRUG SALES PRO-
CEEDS, PLASTIC BAGS, WEIGHING SCALES, RAZOR
BLADES, SIFTING SCREENS AND GRINDERS, MIR-
RORS OR HIGHLY POLISHED HARD SURFACES,
PAPERFOLDS AND TESTING DEVICES, SUCH AS
MELT BOXES, ARE CURRENTLY LOCATED AT THE
ABOVE DESCRIBED RESIDENCE AT 4130 FULLER
AVENUE, EUGENE, LANE COUNTY, OREGON."

The magistrate who issued the warrant was entitled to accept the affiant's representations that people who deal in drugs are likely to keep controlled substances in their homes. *See, e.g., State v. Anspach,* 298 Or 375, 692 P2d 602 (1984).

The trial court also concluded that too much time had passed between the observations made by the informant and the issuance of the warrant. To determine what lapse of time is permissible before information in an affidavit for a search warrant becomes stale, one must examine the facts of each case. *State v. Horwedel,* 66 Or App 400, 404-05, 674 P2d 623, *rev den* 296 Or 638 (1984). It has been observed that "the continuity of the offense is the single most important factor in the determination of whether the probable cause is valid or stale." 1 LaFave, *Search and Seizure* §3.7 (1978). Here, the state attempted to establish that defendant's involvement in drug dealing was a continuing activity. The information contained in this affidavit was received over a period of time, beginning in the spring of 1984 and continuing until the day the warrant was issued, including Ashbaugh's observations and the arrest of Griffin with the paperfolds containing information about Evoniuk. It may be reasonably inferred from the stated facts that defendant had been engaged in criminal activity over an extended period of time and was so engaged within nine days before the issuance of the search warrant. The information was not stale.

Reversed and remanded.