341
Submitted on record and briefs August 12, 1992, affirmed December 22, 1993

STATE OF OREGON,
*Respondent,*

*v.*

DAVID ROBERT CHEZEM,
*Appellant.*

(91C20021; CA A71145)

865 P2d 1307

Helen L. Cooper filed the brief for appellant.

Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Diane S. Lefkow, Assistant Attorney General, filed the brief for respondent.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

RICHARDSON, C. J.

**RICHARDSON, C. J.**

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. The trial court denied his motion to suppress evidence seized at his residence during the execution of a search warrant. Defendant argues that the affidavit supporting the search warrant does not establish probable cause to believe that evidence of methamphetamine manufacturing and distribution would be found at his residence. We affirm.

Oregon State Police Officer Curths submitted the affidavit for the search warrant. After describing his experience in narcotics investigations, Curths related details regarding defendant and others that were reported in police records compiled from 1985 to 1987 by former Salem Police Officer Nelson. Curths confirmed the substance of these reports with Nelson. From one of Nelson's reports, Curths described a discussion Nelson had in 1985 with two confidential informants who had been arrested for possession of methamphetamine. Those informants (CI#1 and CI#2)[1] told Nelson that they were involved in a methamphetamine distribution network that included defendant, Chris Johnson, Mike Ortwine, Sandy Ortwine and Ron Williams. CI#1 and CI#2 stated that defendant was the methamphetamine "cook," that he lived somewhere in Salem and that he was from California. They also told Nelson that they obtained their methamphetamine from the Ortwines and from Chris Johnson.

Nelson had interviewed another confidential informant (CI#3) on November 25, 1986. CI#3 told Nelson that the Ortwines grew large quantities of marijuana and that they packaged the marijuana with sliced apples to retain the drug's moisture and weight. CI#3 also stated that the Ortwines had access to large quantities of methamphetamine, that they had weapons and were dangerous. Nelson told Curths that CI#3 received this information from "other drug associations that CI#3 was acquainted with."

Curths next described information Nelson received from a fourth confidential informant (CI#4) on October 9,

---

[1] For convenience only, we use the same designations for the unnamed informants that the affiant used in the affidavit.

1987. CI#4 told Nelson that CI#4 had been a close associate of the Ortwines and had been in contact with them 10 months previously. CI#4 described the Ortwines' residence and identified a pole barn where CI#4 had seen marijuana drying. CI#4 stated that the Ortwines packaged the marijuana with fruit slices to retain the moisture and weight of the drug. CI#4 also told Nelson that the Ortwines sold large quantities of methamphetamine and that CI#4 had seen Sandy Ortwine weighing methamphetamine in her kitchen for distribution. Nelson told Curths that he confirmed the location of the Ortwines' residence as described by CI#4.

Curths also recited information that he received from a confidential reliable informant (CRI#5) within 30 days before signing the affidavit. CRI#5 told Curths that CRI#5 was personally acquainted with people involved in the distribution of methamphetamine and identified those persons as defendant, Mike Kliner, Chris Johnson, Joe, and Mike and Sandy. CRI#5 pointed out a residence, which Curths later confirmed as defendant's residence. CRI#5 told Curths that he had been to Johnson's residence where he had seen Johnson packaging methamphetamine and in possession of more than a user's amount of that substance. CRI#5 pointed out that residence to Curths and Curths confirmed it as Johnson's residence. CRI#5 also informed Curths that he had seen Mike and Sandy Ortwine with more than a user's amount of methamphetamine at their residence. CRI#5 described the location of Ortwines' residence, which Curths confirmed. CRI#5 also accurately described vehicles registered to the Ortwines. Curths stated that CRI#5 was reliable, because CRI#5 had given accurate and reliable information about people involved in drug activities in the past. In addition, CRI#5 had made at least three controlled buys of methamphetamine within the past 30 days.

CRI#5 told Curths that CRI#5 had received information within the past 30 days from another person, who did not know that CRI#5 was passing information to the police. Curths did not disclose the name of this "unwitting informant," (UI#6) but stated that the person's identity was confirmed by the Stayton police. CRI#5 told Curths that UI#6 told CRI#5 that the Ortwines, Mike Kliner, Chris Johnson and defendant were involved in a methamphetamine

manufacturing and distribution organization. UI#6 said that he knew this because he was also part of this organization. UI#6 told CRI#5 that Mike and Sandy had a methamphetamine laboratory at their residence. UI#6 stated that UI#6 gets methamphetamine from Mike and Sandy on a regular basis and that UI#6 also could obtain it from "[defendant] who lives in Salem." UI#6 explained that defendant was the methamphetamine "cook." UI#6 also told CRI#5 that the Ortwines supply Chris Johnson with the methamphetamine that he distributes. CRI#5 told Curths that CRI#5 knows that UI#6 is personally acquainted with Mike, Sandy, defendant, Mike Kliner and Chris Johnson, because UI#6 and CRI#5 were together with these people at Mike and Sandy's residence. CRI#5 also has gone with UI#6 to defendant's residence in Salem. Curths observed CRI#5 as he visited both defendant's and the Ortwines' residences.

Curths also related information from two other confidential informants (CI#7 and CI#8). On November 30, 1990, Curths spoke with CI#7 who told him that CI#7 knows Mike Ortwine and his address in Stayton, Oregon. CI#7 said that he had seen Ortwine at his residence during the day and that Ortwine does not seem to work, although he has money. Curths later talked with CI#8, a local neighbor of the Ortwines. CI#8 told Curths that CI#8 had seen three adult males on the Ortwines' property on a regular basis and that the people on the property do not appear to work at regular employment. CI#8 told Curths that he had seen traffic into and out of the residence late at night. CI#8 stated that he had recently heard short bursts of firearms being fired near the Ortwines' residence.

A week before requesting the search warrant, Curths obtained telephone records for the Ortwines' residence. Those records showed that, in the previous three months, 17 calls were made from the Ortwines' residence to defendant's telephone number.

■■ An affidavit is sufficient to support a search warrant if the magistrate could reasonably conclude that the facts and circumstances recited in the affidavit are true, and the items sought will probably be found in the location to be searched. ORS 133.555(2); *State v. Villagran*, 294 Or 404, 408, 657 P2d 1223 (1983); *State v. Brotherton*, 123 Or App 243, 246, 859

P2d 565 (1993). In determining the sufficiency of an affidavit, we construe the affidavit in a commonsense and realistic fashion. *United States v. Ventresca*, 380 US 102, 108, 85 S Ct 741, 13 L Ed 2d 684 (1965); *State v. Villagran, supra*. Doubtful or marginal cases are resolved in the light of the preference for warrants. *State v. Evans*, 110 Or App 46, 51, 822 P2d 1198 (1991).

■ Defendant challenges the sufficiency of the affidavit on several grounds. We first address his arguments that seek to excise certain information from the affidavit. As a general proposition, defendant argues that we can consider only those statements in the affidavit that specifically refer to defendant and his residence, and any inferences that can be drawn from those references. Defendant's approach is too narrow. In analyzing the sufficiency of an affidavit, we may consider any facts and circumstances in the affidavit that are accepted as true and that tend to show that the objects sought are likely to be found in the places to be searched. *State v. Young*, 108 Or App 196, 200, 816 P2d 612 (1991), *rev den* 314 Or 392 (1992); ORS 133.545(4). Information about other persons or places may or may not support a search of defendant's residence.

■ Defendant also argues that, because the affidavit does not demonstrate the basis of knowledge and the veracity of all of the unnamed informants, information provided by these informants should be disregarded. A supporting affidavit that relies on information from an unnamed informant must demonstrate the basis of the informant's knowledge and facts that establish the informant's veracity. ORS 133.545(4); *State v. Young, supra*. Although the affidavit relies on information from eight unnamed informants, two of those informants, CRI#5 and UI#6, provide the primary information pertinent to defendant. Because the information provided by the other unnamed informants is unnecessary to sustain the warrant to search defendant's residence, we limit our discussion to CRI#5 and UI#6.

■ Defendant concedes that the affidavit establishes CRI#5's basis of knowledge, but contends that it does not contain a factual basis to sustain CRI#5's veracity. The veracity of an unnamed informant may be established by a showing that the informant is credible or that the information provided is reliable. *State v. Young, supra*. The affidavit

states that CRI#5 provided accurate and reliable information about drug activity in the Stayton area in the past. The affiant verified CRI#5's past performance with Detective Conrad of the Stayton Police Department. Affiant also described three successful controlled buys of methamphetamine made by CRI#5 in the previous 30 days. Those facts provided a sufficient basis for the magistrate to conclude that CRI#5 was credible. *State v. Young, supra*; *State v. Wilson/Helms*, 83 Or App 616, 622, 733 P2d 54, *rev den* 303 Or 172 (1987).

CRI#5's credibility was also buttressed by the independent investigation of some of the information supplied by that informant. Affiant corroborated that the houses pointed out by CRI#5 were the residences of defendant, Chris Johnson, and the Ortwines. Affiant also confirmed that the description of the Ortwines' vehicles given by CRI#5 matched the description of vehicles registered by the Ortwines. Although these facts may not be helpful in establishing probable cause, they demonstrate present reliability of the informant and are relevant to establishing veracity under the statute. *State v. Brotherton, supra*; *State v. Young, supra*.

Because CRI#5 acted principally as a conduit for information from UI#6, we must assess UI#6's basis of knowledge and veracity separately. *State v. Worsham*, 114 Or App 170, 173, 834 P2d 1033, *rev den* 314 Or 574 (1992); *State v. Young, supra*. The basis of knowledge component provides the issuing magistrate with grounds for determining the weight to give the information supplied by the informant. *State v. Young, supra*. UI#6 admitted involvement with defendant, Chris Johnson and the Ortwines in a methamphetamine manufacturing and distribution organization. UI#6 further explained the participants' roles in the organization. The magistrate could infer from those statements that UI#6 was speaking from personal knowledge and, given the level of detail, accord weight to UI#6's statements to CRI#5.

The affidavit demonstrated UI#6's veracity by showing that UI#6's information was reliable. In statements to CRI#5, UI#6 admitted to participating in a specific methamphetamine network and to purchasing methamphetamine from other participants in that network. An admission against a speaker's penal interest is a factor bearing on the reliability of the speaker's information. *State v. Alvarez*, 308

Or 143, 149, 776 P2d 1283 (1989); *State v. Worsham, supra.*
The weight to be given that evidence depends on the facts of
the case. Because UI#6 did not know that CRI#5 was a police
informant, UI#6 presumably was not tailoring the admis-
sions to avoid prosecution or curry favor with the police.
Given those circumstances, the magistrate could give weight
to UI#6's admissions. *See State v. Young, supra.*

Corroboration also may help establish the reliability
of an unnamed informant's information. *State v. Worsham,
supra.* Information from one unnamed informant may be
used to corroborate that of another unnamed informant.
*State v. Diaz*, 29 Or App 523, 531-32, 564 P2d 1066 (1977).
Here, much of the information that UI#6 provided was
corroborated by information from CRI#5. CRI#5 named the
same participants in the methamphetamine organization
that UI#6 named. CRI#5 confirmed that UI#6 knew these
people when CRI#5 and UI#6, together, met the other
participants at the Ortwines' residence. UI#6 purchased
methamphetamine from the Ortwines and Chris Johnson.
CRI#5 had observed both the Ortwines and Chris Johnson in
possession of more than a user's amount of methampheta-
mine at their respective residences within the past five days.
The affidavit provided sufficient facts to establish the veracity
of UI#6.

Defendant also argues that the information provided
by CRI#5 was "stale" and should be disregarded.[2] As we said
in *State v. Young, supra*:

"Of course, information is never stale; that phrase is a
shorthand description of the analysis about whether or not
the evidence sought will be there after the length of time
since the event described in the affidavit occurred. The
purpose of the analysis is to determine whether, given the
time between the event described and issuance of the war-
rant, there is a reasonable inference that the evidence will be
where the affidavit suggests. The length of time is only one
factor in the analysis. Another important factor is the char-
acter of the crime or the thing to be seized and whether,

[2] Defendant makes the same argument regarding information in the affidavit
that was gathered by Nelson and reported in the police records. Because we do not
rely on any of that information to sustain the search warrant, we do not comment on
defendant's argument insofar as it relates to that information.

under the circumstances, the evidence is likely to be moved or consumed." 108 Or App at 204.

If the crime is the manufacture of a controlled substance, a magistrate can infer that the conduct will continue for some time. *State v. Evans, supra.* Affiant stated that he had talked with CRI#5 within the past 30 days. CRI#5 told affiant that defendant and others were involved in a methamphetamine manufacturing and distribution organization. UI#6 stated that defendant was a cook in that organization and also sold methamphetamine. UI#6 told CRI#5 that the lab was at another participant's residence. CRI#5 had seen more than a user's amount of methamphetamine at that residence, as well as at the residence of another participant, within five days of talking to the affiant. The warrant sought evidence of the manufacture as well as the sale of methamphetamine. The magistrate could infer from these facts that there was a continuing operation and that the evidence sought would not have been moved or consumed.

 Defendant contends that, even considering the information provided by the informants, the facts recited in the affidavit do not support the conclusion that seizable items would be found in his residence. For purposes of a search warrant, probable cause requires that the facts in the supporting affidavit "lead a reasonable person to believe that seizable things will probably be found in the location to be searched." *State v. Anspach,* 298 Or 375, 381, 692 P2d 602 (1984). The warrant allowed police to search for

"[m]ethamphetamine, scales, packaging materials, drug paraphernalia, cash money associated with controlled substance transactions, chemical lists and catalogs, documentary evidence showing ownership and control of the location, documentary evidence showing the identity of co-conspirators involved in drug activity and drug records."

The affidavit identified defendant as a participant in a methamphetamine manufacturing and distribution organization. It also provided details of the organization, including the participants' names, addresses and respective roles. Defendant was identified as the methamphetamine cook for the organization. CRI#5 saw defendant with the other members of the organization at the Ortwines' residence in Stayton, where the methamphetamine lab was located. UI#6 stated

that UI#6 could obtain methamphetamine from defendant who lived in Salem and that CRI#5 accompanied UI#6 to defendant's residence in Salem. Telephone records of the Ortwines' residence showed that frequent calls were made from the Ortwines' residence to defendant's residence during the last three months. Affiant, who had 13 years experience as a police officer and six years experience in drug investigations, stated that persons involved in the manufacturing and delivery of controlled substances are likely to keep controlled substances, business records, large amounts of cash, drug paraphernalia and drug manufacturing equipment in their residence and on their property.[3] We conclude that the facts recited in the affidavit would lead a reasonable person to conclude that evidence of methamphetamine manufacturing and delivery would probably be found at defendant's residence. The trial court did not err in denying defendant's motion to suppress.[4]

Affirmed.

---

[3] A magistrate may consider the representations of an experienced police officer as a factor in determining probable cause. *State v. Evoniuk/Niemi*, 80 Or App 405, 412-13, 722 P2d 1277 (1986). Because there are additional facts from which the magistrate could conclude that evidence of the manufacture and delivery of methamphetamine would be found at defendant's residence, this case is distinguishable from *State v. Evans*, 119 Or App 44, 849 P2d 539 (1993).

[4] We find it unnecessary to address defendant's final argument.