Argued and submitted July 12, reversed and remanded August 12, both petitions for review denied December 17, 1996 (324 Or 487)

STATE OF OREGON,
*Appellant,*

*v.*

BRADLEY LOWELL BEAGLES,
*Respondent.*

STATE OF OREGON,
*Appellant,*

*v.*

TAMI KAY WHITE,
*Respondent.*

(94-09-6993-C2; CA A89124)

923 P2d 1244

Kaye E. Sunderland, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Robert J. McCrea argued the cause and filed the brief for respondent Bradley Lowell Beagles.

Eric R. Johansen, Assistant Public Defender, argued the cause for respondent Tami Kay White. With him on the brief was Sally L. Avera, Public Defender.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendants are charged with multiple offenses related to controlled substances. The state appeals from an order granting their pretrial motion to suppress evidence obtained pursuant to a search warrant. ORS 138.060(3). It argues that the trial court erred in determining that the warrant failed to meet the particularity requirement of ORS 133.565(2)(c). We reverse and remand.

According to the information in the affidavit submitted in support of the search warrant, officers received a tip from an anonymous caller that defendant Beagles' residence contained a large quantity of methamphetamine and that there was a methamphetamine manufacturing process set up in a large metal building on the premises. Another confidential informant told police that the informant had been at a party at Beagles' residence at which a large number of people were snorting "crank," the slang word for methamphetamine. The informant also told the officers that Beagles was "giving lines of crank away to numerous people." The officers knew the informant to be reliable because the informant had given them other information in the past that they had been able to verify through other sources. At the officers' request, the informant agreed to attempt a "controlled buy" of methamphetamine from Beagles. One of the officers, who was working undercover, drove the informant to Beagles' residence. The undercover officer stayed in the vehicle, and the informant went into the residence and returned with approximately three grams of methamphetamine.[1] The officer/affiant averred that, based on this and other information included in the affidavit, he had probable cause "to believe the above premises * * * is [sic] being used for the manufacturing and delivery of controlled substances." He further stated:

> "I know through my training and experience as a police officer that when a person(s) engages in the illegal possession, manufacture and use of controlled substances, most frequently, and in almost all cases, more than one controlled substance is found in their residence or possession."

---

[1] The trial court found that the actual weight of the methamphetamine was 1.25 grams.

Based on the affidavit's information, the officers obtained a warrant to search Beagles' residence, including "all outbuildings, vehicles, and persons found on the property[.]" The warrant authorized the officers to search for:

"1.   controlled substances

"2.   tools and items to 'cut' and package controlled substances, to include, but are not limited to scales, plastic baggies, paper folds, ziplocks, and cutting agents such as mannitol, vitamins in powder or pill form, and baking soda.

"3.   talley [sic] sheets

"4.   evidence of domicile and control; these items include: power and phone bills, photographs, bank records, personal identifications, tax documents, employment records, correspondence [sic], rent receipts, motel receipts, address books and phone numbers, handwritten notations, and messages, financial records.

"5.   cash

"6.   firearms, weapons and ammunition

"7.   materials to manufacture methamphetamine to include materials and chemicals."

The officer executed the warrant and seized numerous items.[2]

---

[2] "1. Living Room:
    1. 1-notepad
"2. Bathroom:
    1. 1-Cigarette pack w/ plastic bag suspected Methamphetamine
    2. 1-smoking pipe w/ suspected marijuana residue
"3. Master Bedroom:
    1. 1-Wallet of Bradley Beagles containing misc paperwork and 2 bags of suspected methamphetamine
    2. 1-Mirror and Razor blade and suspected methamphetamine from mirror
    3. 1-bag with bag of suspected methamphetamine
    4. 1-split cup with empty bags and powder residue
    5. 1 set of 'Ohaus' triple beam scales
    6. 2 empty bags and 1 bag with several bags of suspected methamphetamine
    7. miscellaneous paperwork
"4. Rocky's Bedroom:
    1. 1-'Ruger' .22 revolver SER#26275544
    2. 1-cup containing a smoking pipe
    3. numerous empty plastic bags
"5. Bathroom off of main Bedroom:
    1. 1-snort pipe with powder residue
    2. 1-hot plate

██ Defendants argued, and the trial court agreed, that the phrase "controlled substances" rendered the warrant defective in the light of the particularity requirements of ORS 133.565(2), and Article I, section 9, of the Oregon Constitution, and that therefore, suppression of the evidence obtained pursuant to the search warrant was required. ORS 133.565(2) provides, in part:

"(2) The warrant shall state, or describe with particularity:

"* * * * *

"(b)  The name of the person to be searched, or the location and designation of the premises or places to be searched;

"(c)  The things constituting the object of the search and authorized to be seized[.]"[3]

Defendants rely on principles articulated in two cases, *State v. Ingram*, 313 Or 139, 831 P2d 674 (1992), and *State v. Reid*, 319 Or 65, 872 P2d 416 (1994), in support of the trial court's ruling. Those are cases decided under ORS 133.565(2)(b). In *Ingram*, the court held that a warrant that authorized officers to search "all vehicles determined to be associated with the occupants of said premises" violated ORS 133.565(2)(b) because there was not probable cause to believe a search of the vehicles would reveal seizable evidence. *Ingram*, 313 Or at 145. The court first noted that the particularity requirement of the statute is "at least as restrictive as the constitutional prohibitions against general warrants." *Id.*

---

"6.  Family Room:
  1.  1 piece of glassware
"7.  Shop
  1.  1-'Remington' .22 rifle SER#692322
  2.  1-keylock with 10 bags of suspected methamphetamine
  3.  1-road map with telephone number
  4.  1-small bag of marijuana and a smoking pipe"

[3] The state concedes that the portion of the warrant that allowed the officers to search all persons and vehicles on the premises was not sufficiently particular. Nevertheless, it contends, and defendants do not counter this contention, that "none of the evidence seized was obtained as the result of a search of a person or moving vehicle." Because there was no evidence obtained by that part of the search, suppression is inappropriate. *See State v. Sargent*, 323 Or 455, 462, 918 P2d 819 (1996) (holding that when no item from a search warrant was tainted by potentially trespassory conduct, there is no need to suppress the evidence).

at 143. It then explained that the purpose of the requirement is to protect citizens' privacy interests from governmental intrusion by prohibiting search warrants that give an officer unlimited authority to search and seize. The court explained that a warrant is defective when it is ambiguous and potentially so broad that "officers executing it could invade privacy interests not intended by the magistrate to be invaded and could conduct searches not supported by probable cause." *Id.* at 145. A warrant may also unambiguously describe premises such that "it makes possible the invasion of [a privacy interest] without the foundation of probable cause for the search[.]" *Id.* at 144 (quoting *State v. Blackburn/Barber*, 266 Or 28, 34-35, 511 P2d 381 (1973)).

In *Reid*, the warrant authorized the officers to search all "persons present" at the described premises. When the officers arrived at the premises to execute the warrant, the defendant was approaching the front door from outside the residence. The defendant also had been named in the affidavit supporting the warrant, and the affidavit provided probable cause for the search of his person. The court held that the warrant lacked particularity because it "authorize[d] a search that [was] broader than the supporting affidavit supplie[d] probable cause to justify." *Reid*, 319 Or at 71. In particular, the court noted that the warrant authorized officers to search any person who approached the residence's front door, including a uniformed mail carrier, a package delivery person, or even a "neighbor seeking to borrow a cup of sugar." *Id.* The court concluded that because the supporting affidavit did not demonstrate probable cause to believe that *all* persons present on the premises would be associated with the criminal activity taking place there, the warrant was unlawful under ORS 133.565(2)(b) insofar as it purported to authorize the search of all persons present such as the defendant. Therefore, any evidence discovered during the search of the defendant's person was suppressed.

In this case, defendants argue under *Ingram* and *Reid* that there is no probable cause in the affidavit to seize evidence pertaining to controlled substances other than evidence about methamphetamine. They assert that the trial court correctly granted their motion to suppress because the warrant unlawfully authorizes the seizure of things for which

there is no probable cause to seize based on the information in the affidavit. The state focuses more on the places authorized to be searched. It counters that the use of the phrase "controlled substances" satisfies the particularity requirements of the statute because it permits the executing officers to search defendants' residence with a reasonable degree of certainty. Additionally, it says that the affidavit supplies probable cause to search the residence based on the averment of the affiant that, in his experience, people who engage in the use, delivery and manufacture of one controlled substance usually possess other controlled substances. Alternatively, the state says that even if the warrant is overly broad, the search did not extend into areas for which a search was not justified by probable cause.

■ This case is governed by ORS 133.565(2)(c), which requires warrants to state with particularity the things constituting the object of the search and authorized to be seized. As pointed out previously, the holdings of *Ingram* and *Reid* were decided under a different subsection of ORS 133.565(2). Nonetheless, the requirements when applied become intertwined and the overriding inquiry is necessarily the same: whether the language in the warrant permits the seizure of things for which no probable cause exists, thereby invading a privacy interest of defendants in the things seized. Thus, in that light, we turn to defendants' argument: Are the words "controlled substances" too broad in scope in the light of the information in the affidavit because they permitted an invasion of defendants' privacy interests without probable cause?

We conclude that defendants' argument proves too much. Methamphetamine is a controlled substance. As defined by ORS 475.005(6), "controlled substances" is a generic phrase referring to a number of different substances including "methamphetamine." The warrant authorizes the search for and the seizure of the very kind of substances for which the affidavit provides probable cause. Moreover, the affiant says that, based on his experience and training, when a person engages in the illegal possession, manufacture and use of controlled substances, "most frequently, and in almost all cases, more than one controlled substance is found in their residence or possession."

■    A magistrate may give weight to the expression in a supporting affidavit of an officer's knowledge when it is based on training and experience so long as there are other facts in the affidavit that provide a nexus to the place to be searched. For instance in *State v. Evans*, 119 Or App 44, 47, 849 P2d 539 (1993), the issue was whether there was a nexus between the defendant's residence and a marijuana garden 35 miles away. We held that the affiant's prior experiences alone could not demonstrate probable cause to search the defendant's residence. In contrast, we held in *State v. Seven*, 91 Or App 506, 755 P2d 747, *rev den* 307 Or 101 (1988), and in *State v. Evoniuk/Niemi*, 80 Or App 405, 722 P2d 1277 (1986), that the magistrates who issued the warrants to search the defendants' residences were entitled to rely on the affiants' experiences that those who are involved in drug trafficking are likely to keep controlled substances and records pertaining to their sales in their residences. In each case, there was some evidence that indicated that controlled substances were connected to the place to be searched.

■    Here, the principle regarding the import of an officer's prior training and experience in a supporting affidavit for a search warrant also applies. For such an averment to be given weight, there must be some nexus between the other information in the affidavit and the officer's prior experiences that would permit a reasonable magistrate to authorize the seizure of the things described in the warrant. In this case, that nexus is provided by information such as the controlled buy that, when combined with the officer's prior experiences, could permit a reasonable magistrate to authorize the search for and the seizure of "controlled substances."[4]

Nonetheless, defendant argues that the warrant is defective because it permits the police to conduct searches for things other than methamphetamine, "e.g., blotter paper for

---

[4] After-the-fact scrutiny by trial and appellate courts of the sufficiency of an affidavit for probable cause does not take the form of *de novo* review. When the issue is whether a "reasonable magistrate" could determine that probable cause exists from the facts presented, the issuing magistrate's determination of probable cause should be paid great deference by a reviewing court because of the preference accorded to warrants. Also, a defendant bears the burden of demonstrating that probable cause could not exist. *State v. Prince*, 93 Or App 106, 112-13, 760 P2d 1356, *rev den* 307 Or 246 (1988).

LSD, seeds for marijuana, [or] pharmaceutical prescription bottles duly labeled." According to defendants, the areas to be searched are "confined by the nature of the 'things' to be searched for and to be seized." What that argument fails to recognize is the intrinsic characteristics of controlled substances. If the search warrant authorized the search for an elephant, a warrant authorizing the search of a bathroom medicine cabinet would be overly broad. On the other hand, the characteristics of controlled substances are such that they could be found in small depositories such as pill bottles as well as in large areas such as fields or forests. Here, the authorized search is in areas for which the affidavit provides probable cause, *i.e.*, defendants' residence. We conclude that the particularity requirements of ORS 133.565(2) were not violated under the circumstances.

Reversed and remanded.